**Daniel Francei GUMBOL, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 86–3136.**

United States Court of Appeals, Sixth Circuit.

Argued Jan. 22, 1987.

Decided April 2, 1987.

Charles S. Owen (argued), Detroit, Mich., for petitioner.

David Bernal, Immigration & Naturalization, Robert Kendall, Jr., Criminal Div., Washington, D.C., Anthony Nykus, Cincinnati, Ohio, Nicholas J. Pantel, Asst. U.S. Atty., Ellen Sue Shapiro (argued), Dept. of Justice,—Office of Immigration Litigation, Civ. Div., Washington, D.C., for respondent.

Before KEITH, KRUPANSKY, and GUY, Circuit Judges.

RALPH B. GUY, Jr., Circuit Judge.

Petitioner appeals from the decision of the Board of Immigration Appeals (BIA) denying his application for withholding of deportation under § 243(h) of the Immigration and Nationality Act (Act), 8 U.S.C. § 1253(h), as amended, and for asylum under § 208(a) of the Act, 8 U.S.C. § 1158, as amended. For the following reasons, the order of deportation is affirmed.

## I.

Petitioner, Daniel Francei Gumbol, is a forty-five year-old native and citizen of Iraq who entered the United States on December 23, 1978. On February 25, 1980, petitioner was served with an order charging that he had overstayed the limit on his non-immigrant visa and ordering him to show cause why he should not be deported under § 241(a)(2) of the Act, 8 U.S.C. § 1251(a)(2). Petitioner, represented by counsel, filed an application for withholding of deportation or for asylum. The application stated that petitioner had been beaten at the factory where he had worked in Iraq by members of the ruling Baath party for refusing to join the party and because he was a Christian. The application was submitted to the State Department Bureau of Human Rights and Humanitarian Affairs (BHRHA) for an advisory opinion on petitioner's eligibility for asylum. In a letter addressed to the Immigration Court, the BHRHA stated:

> We have carefully reviewed the information submitted as part of the application and have assumed the facts in this case as presented are true. On this basis, we believe that the applicant has failed to establish a well-founded fear of being persecuted upon return to Iraq on account of race, religion, nationality, membership in a particular social group or political opinion.... Consequently, the applicant does not appear qualified for asylum.

Deportation hearings were held on February 14, 1984 and again on March 12, 1984, during which petitioner was represented by counsel and offered testimony and evidence on his behalf. At the hearings, petitioner testified about the beating which he allegedly received. On direct examination, petitioner stated that the attack occurred in 1977; however, on cross-examination petitioner corrected his earlier statement and testified that the incident took place in October of 1978 as he had originally stated in his application for asylum. In support of his claim, petitioner submitted an affidavit from a friend, Sarkon Mirza. In the affidavit, Mirza stated that he had seen petitioner shortly after the attack and that he had observed that the petitioner's face was badly bruised. The affidavit did not state that Mirza had witnessed the beating itself. Mirza, however, did state that Iraqi Christians were persecuted by the Baath party.

The record reveals that petitioner's mother, two brothers, and two sisters still live in Iraq. Petitioner did not claim that any of his family had been persecuted by the Iraqi government. Petitioner's wife and two children currently reside with him in the United States. Petitioner also has a sister who lives in the United States.

The only other evidence presented at the hearing consisted of literature describing the general human rights conditions in Iraq. Petitioner did not claim that he had ever been arrested or imprisoned due to his beliefs. Nor did he claim to be involved in any political activities.

In a written opinion issued on April 20, 1984, the immigration judge ruled that petitioner was deportable under § 241(a) of the Act. The judge further held that the petitioner did not qualify for withholding of deportation under § 243(h) of the Act or for asylum under § 208. In reaching this

conclusion, the judge discounted the petitioner's testimony regarding the alleged beating due to inconsistencies in the testimony with respect to the date of the incident and the identity of the assailants. The judge also noted that the alleged beating was the sole evidence of persecution against the petitioner and that the general information about human rights conditions in Iraq did not show that petitioner would be singled out for persecution if he returned to Iraq. Although the judge denied the request for asylum or withholding of deportation, the petitioner was granted permission to voluntarily depart within thirty days in lieu of immediate deportation.

On May 2, 1984, petitioner perfected an appeal to the Board of Immigration Appeals. In a written opinion, dated January 13, 1986, the Board dismissed the appeal and upheld the decision of the immigration judge finding the petitioner deportable and denying his application for asylum and withholding of deportation. The Board also granted petitioner's request for voluntary departure within thirty days.

### II.

Petitioner filed a timely petition for review with this court on February 12, 1986, pursuant to § 106 of the Act, 8 U.S.C. § 1105a, which grants jurisdiction to this court to review the final orders of deportation. 8 U.S.C. § 1105a(4) provides in part:

The petition shall be determined solely upon the administrative record upon which the deportation order is based and the Attorney General's finding of fact, if supported by reasonable, substantial, and probative evidence on the record considered as a whole shall be conclusive.

Thus, our scope of review on appeal is limited to determining whether the Board has abused its discretion in denying petitioner's requests for withholding of deportation or asylum.

On appeal, petitioner contends that the Board erred when it applied the same standard both to the petitioner's request for withholding of deportation under § 243(h) and his request for asylum under § 208.

Section 243(h) of the Act, 8 U.S.C. § 1253(h), provides in part:

The Attorney General *shall not* deport or return any alien ... to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.

*Id.* (emphasis added). This statute mandates the withholding of deportation if the alien satisfies the statutory criteria. The burden is on the alien to show entitlement to asylum. 8 C.F.R. § 242.17(c). In order to meet this burden, an alien must show a "clear probability of persecution" if he were to return to his homeland. *See INS v. Stevic,* 467 U.S. 407, 413, 104 S.Ct. 2489, 2492, 81 L.Ed.2d 321 (1983). In other words, the alien must show that it is "more likely than not that [he] would be subject to persecution." *Id.* at 424.

In addition to the provisions of § 243(h), aliens seeking to avoid deportation can also attempt to show that they are eligible for a discretionary grant of asylum under § 208(a) of the Act, 8 U.S.C. § 1158(a), which provides:

The Attorney General shall establish a procedure for an alien physically present in the United States or at a land border or port of entry, irrespective of such alien's status to apply for asylum, and *the alien may be granted asylum in the discretion of the Attorney General,* if the Attorney General determines that such alien is a refugee within the meaning of § 1101(a)(42)(A) of this title.

8 U.S.C. § 1158(a) (emphasis added). Thus, unlike the mandatory provisions of § 243(h), the granting of asylum remains discretionary even if the alien qualifies as a "refugee." The definition of "refugee" is contained in 8 U.S.C. § 1101(a)(42)(A) which provides:

The term "refugee" means any person who ... is unable or unwilling to return to [his native country] because of persecution or a *well-founded fear of persecution* on account of race, religion, nation-

ality, membership in a particular social group, or a particular opinion. . . .

*Id.* (emphasis added). The regulations promulgated pursuant to the statutory provision placed the burden of proof on the alien by requiring him to show that he is "unwilling" to return to his native country because of "persecution or a well-founded fear of persecution." 8 C.F.R. § 208.5.

The question presented in this appeal is whether the petitioner's burden is greater under the clear probability of persecution standard contained in § 243(h) than that which he would be required to show under the well-founded fear of persecution standard which governs request for asylum under § 208. The petitioner contends that the well-founded fear standard is more generous than the clear probability standard; and therefore, the Board erred in applying the clear probability standard to petitioner's request for asylum. In discussing the applicable standard, the Board stated:

> We have held that the well-founded fear standard for asylum requires an alien's fear of persecution to have a sound basis in external, objective facts that show it is likely the alien will become the victim of persecution. *We have further held that the eligibility standards for withholding of deportation and asylum are not meaningfully different and, in practical application, converge.*

Board opinion (Jan. 13, 1986), App. at 111 (emphasis added) (citing *Matter of Acosta,* Interim Decision 2986 (BIA March 1, 1985)).

There is a split of authority on this issue both among the circuits[1] and within the Sixth Circuit itself.[2] As previously noted, the United States Supreme Court has held that the clear probability of persecution standard governs the determination of requests for withholding of deportation un-der § 243. *INS v. Stevic,* 467 U.S. at 413, 104 S.Ct. at 2492. In *Stevic,* however, the Court expressly refrained from deciding what standard should be applied to requests for asylum under § 208:

> Today we resolve one of those problems by deciding that the "clear probability of persecution" standard remains applicable to § 243(h) withholding of deportation claims. *We do not decide the meaning of the "well-founded fear of persecution" which is applicable by the terms of the Act and regulations to requests for discretionary asylum.* That issue is not presented by this case.

467 U.S. at 430, 104 S.Ct. at 2501 (emphasis added).

In *Stevic,* the Court reversed a decision by the United States Court of Appeals for the Second Circuit, *Stevic v. Sava,* 678 F.2d 401 (1982), wherein the Second Circuit had ruled that the well-founded fear of persecution standard was applicable to both grants of asylum and withholding of deportation and that this standard was "more generous" than the clear probability standard. *See* 678 F.2d at 405. In rejecting this first conclusion, the Supreme Court stated:

> For purposes of our analysis, we may assume, as the Court of Appeals concluded, that the well-founded fear standard is more generous than the clear probability of persecution standard because we can identify no basis in the legislative history for applying that standard in § 243(h) proceedings or any legislative intent to alter the preexisting practice.

467 U.S. at 425, 104 S.Ct. at 2498.

The assumption that the well-founded fear standard is "more generous" is clearly dictum in light of the ultimate disposition of the case and the remarks elsewhere in the opinion which expressly state that the Court did not decide this issue. Thus, the

---

**1.** *Compare Sankar v. INS,* 757 F.2d 532 (3rd. Cir.1985) (equating standards) *with Guevara Flores v. INS,* 786 F.2d 1242, 1249 (5th Cir.1986) (well-founded fear standard more generous) and *Bolanos-Hernandez v. INS,* 767 F.2d 1277, 1283 (9th Cir.1985) (same) and *Carvajal-Munoz v. INS,* 743 F.2d 562, 573, 575 (7th Cir.1984) (same).

**2.** *Compare Nasser v. INS,* 744 F.2d 542, 543 n. 1 (6th Cir.1984) (equating standards) and *Dally v. INS,* 744 F.2d 1191, 1196 n. 6 (6th Cir.1984) (same) *with Yousif v. INS,* 794 F.2d 236, 242 (6th Cir.1986) (well-founded fear standard is more generous) and *Dolores v. INS,* 772 F.2d 223, 225 (6th Cir.1985) (*per curiam* ) (same) and *Youkhanna v. INS,* 749 F.2d 360, 362 (6th Cir. 1984) (same).

*Stevic* opinion does not provide any clear guidance with respect to the issue before this court in the instant case. We note, however, that the Supreme Court recently granted certiorari in a case in which the Ninth Circuit ruled that the well-founded fear standard is "more generous." *See Cardoza-Fonseca v. INS*, 767 F.2d 1448, 1451 (9th Cir.1985), *cert. granted*, —— U.S. ——, 106 S.Ct. 1181, 89 L.Ed.2d 298 (1986).[3]

Several published opinions by various panels of the Sixth Circuit have addressed this issue. Unfortunately, however, they have not reached the same conclusion. In *Dally v. INS*, 744 F.2d 1191 (6th Cir.1984), a panel of this court specifically ruled that requests for asylum should be determined under the clear probability of persecution standard. In support of this conclusion the *Dally* court cited the regulations governing asylum procedures which state in part:

> Asylum requests made after the institution of exclusion or deportation proceedings ... shall also be considered as requests for withholding exclusion or deportation pursuant to § 243(h) of the Act.

8 C.F.R. § 208.3(b).

The *Dally* court interpreted this regulatory language to require that the same standard be applied to both requests for asylum and requests for a withholding of deportation, i.e., the clear probability standard. 749 F.2d at 1196 n. 6. This same line of reasoning was also adopted by another panel of this court in *Nasser v. INS*, 744 F.2d 542 (6th Cir.1984). In further support of its position, the *Nasser* court cited to a footnote in the Supreme Court's opinion in *Stevic* wherein the Court discusses the regulatory language quoted above. *See* 744 F.2d at 543 n. 1 (citing 467 U.S. at 423 n. 18, 104 S.Ct. at 2497 n. 18). A close reading of the footnote in *Stevic*, however,

reveals that the Supreme Court expressly rejected the line of reasoning used in *Nasser* and *Dally*:

> We note that when such asylum requests are made after the institution of deportation proceedings, they "shall *also* be considered as requests" under § 243(h). 8 C.F.R. § 208.3(b) (1983) (emphasis supplied). This does not mean that the well-founded fear standard is applicable to § 243(h) claims. Section 208.3(b) simply does not speak to the burden of proof issue; rather, it merely eliminates the need for filing a separate request for § 243(h) relief if a § 208 claim has been made.

467 U.S. at 423 n. 18, 104 S.Ct. at 2497, n. 18.

Shortly after the decisions in *Dally* and *Nasser* were published, another panel of this court clearly held that the well-founded fear standard which applies to grants of asylum is more generous than the clear probability standard. *Youkhanna v. INS*, 749 F.2d 360 (6th Cir.1984). The *Youkhanna* court based its conclusion on the dictum contained in *Stevic*:

> In *Stevic*, ... the Supreme Court expressly declined to decide the meaning of the phrase, "well-founded fear of persecution," ... but did "assume ... that the well-founded fear standard is more generous than the clear probability of persecution standard."

749 F.2d at 362 (citations omitted). Although the *Youkhanna* court cited *Dally* for another proposition, it was apparently unaware of the conflict between its decision and the unitary standard adopted in *Dally;* perhaps because both cases reached the seem result, i.e., that the alien should be deported.

---

3. Since the hearing of the instant case, the Supreme Court has rendered its decision in *Cardoza-Fonseca* affirming the decision of the Ninth Circuit. *See* —— U.S. ——, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). The Supreme Court held that the well-founded fear standard is in fact more generous than the clear probability standard. Writing for the majority, Judge Stevens stated that "to show a 'well-founded fear of persecution,' an alien need not prove that it is more likely than not that he or she will be persecuted in his or her home country." —— U.S. at ——, 107 S.Ct. at 1222. The Court, however, declined to set forth a detailed definition of the well-founded fear standard. Instead, the Court expressly held that the contours of the standard should be shaped by the "process of case-by-case adjudication." *Id.* at ——, 107 S.Ct. at 1221. We find that our decision in the instant case is consistent with the rule adopted by the Supreme Court in *Cardoza-Fonseca.*

In *Dolores v. INS*, 772 F.2d 223 (6th Cir.1985), this court adopted the well-founded fear standard used in *Youkhanna*, but the *Dolores* court did not specifically address the conflict between the prior cases.

This issue arose again in *Yousif v. INS*, 794 F.2d 236 (6th Cir.1986). Confronted with these conflicting precedents, the *Yousif* court engaged in a lengthy analysis of the issue and concluded that the *Youkhanna* decision was the better interpretation of the statutes. The *Yousif* court noted the apparent inconsistency between the reasoning used in *Nasser* and *Dally* and the footnote in the Supreme Court's opinion in *Stevic*. *Yousif*, 794 F.2d at 241–42 (quoting *Stevic*, 467 U.S. at 423 n. 18, 104 S.Ct. at 2497 n. 18). The *Yousif* court also noted:

> The conclusion that the well-founded fear standard is easier to satisfy is logical since an alien requesting asylum merely seeks to be found *eligible* for a discretionary grant of asylum, rather than claiming *entitlement* to a withholding of deportation.

794 F.2d at 244 (emphasis in original). *See also Sagermark v. INS*, 767 F.2d 645 (9th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986).

The bifurcated standards approach utilized in *Youkhanna, Dolores* and *Yousif* has also recently been adopted by yet another panel of this court in the case of *Munaim J. Dawood-Haio v. INS*, 800 F.2d 90 (1986).

■ Having reviewed the relevant cases in this circuit and other circuits, we conclude that there is a difference between the "clear probability of persecution" standard which governs § 243 withholding of deportation claims and the "well-founded fear of persecution" standard embodied in § 208 which governs requests for discretionary grants of asylum. Therefore, petitioner's claims must be evaluated separately under the different standards which apply to the respective claims.

### III.

#### A.

■ As previously stated, petitioner must show a "clear probability of persecution" in order to establish an entitlement to withholding of deportation under § 243(h). In *Dolores*, this court summarized the requirements of the clear probability standard:

> This court has interpreted *Stevic* to require "that an alien show that it is more likely than not that *he as an individual* will be subject to persecution if forced to return to his native land." Neither "documentary evidence, not pertaining to the applicant individually, that depicts a general lack of freedom or the probability of human rights abuses in the alien's native land" nor the alien's own conjecture or subjective allegations will satisfy this standard. Rather, "some credible evidence" must authenticate the petitioner's allegations.

772 F.2d at 225 (emphasis in original) (citations omitted). *See also Yousif v. INS*, 794 F.2d at 242. A brief comparison with the factual circumstances present in previous similar cases shows that the Board did not abuse its discretion in finding that petitioner did not establish the requisite clear probability of persecution in the instant case.

In *Nasser*, this court found that an Iraqi citizen could not avoid deportation under § 243(h) where the alien alleged that he had been jailed several times and beaten once for refusing to join the ruling Baath party while still in Iraq. The alien also alleged that his father had been beaten by Baath agents and that he would be executed if he returned to Iraq. Finally the alien submitted a document from Amnesty International describing the human rights abuses committed by the Iraqi government. In rejecting the alien's claims for withholding of deportation, the *Nasser* court noted that the alien's allegations were uncorroborated and that there was no evidence that the alien would be "singled-out" for persecution. 744 F.2d at 545. Likewise, in *Dally*, this court upheld the Board's refusal to withhold deportation of three sets of married couples all of whom alleged that they would be persecuted if they were forced to return to Iraq because they were Christian

and because they had refused to join the Baath party. 744 F.2d at 1196. Even the subsequent cases which have adopted a separate standard of proof for requests of asylum have continued to respect the precedential value of *Dally* and *Nasser* with regard to claims made under § 243. *See, e.g., Youkhanna,* 749 F.2d at 361; *Yousif,* 794 F.2d at 292.

■ The facts in the instant case are remarkably similar to those present in *Nasser* and *Dally.* Petitioner contends that he would be subject to persecution if he were forced to return to Iraq because he is a Christian. In support of his contention, petitioner claims that he was beaten once at his place of work in Iraq. Petitioner also submitted the affidavit of a friend who swore that he had observed the injuries which petitioner had received as a result of this beating. As noted by the Board, however, petitioner presented no evidence, other than his own unsubstantiated testimony, that this alleged attack was anything more than an isolated incident or that it was not motivated by personal animosity rather than by political beliefs. Petitioner failed to offer any additional evidence other than generalized information about human rights conditions in Iraq.

Based on the evidence in the administrative record, we hold that the Board did not abuse its discretion in finding that petitioner failed to show the existence of a "clear-probability" that he would be singled-out for persecution upon his return to Iraq. Thus, petitioner is not entitled to withholding of deportation under § 243 of the Act.

### B.

We must now decide whether the evidence presented by petitioner was sufficient to meet the less stringent well-founded fear of persecution standard used to determine whether he is eligible for a discretionary grant of asylum under § 208.

In *Youkhanna,* this court found that the well-founded fear standard is "more generous" than the clear probability standard. Presumably this is so because the test focuses on the alien's own subjective fears of persecution. *See Yousif,* 794 F.2d at 243–44. Nevertheless, this court has continued to impose the requirement that petitioners present some specific facts, either through objective evidence or through persuasive credible testimony, to show that their fear of persecution is "well-founded." *Youkhanna,* 749 F.2d at 362. *See also Delores,* 772 F.2d at 226.

In *Youkhanna,* this court found that the Iraqi aliens did not meet the well-founded fear of persecution standard where they alleged that they were Christians and that they were sympathizers of an opposition political party. One of the aliens also testified that he had been beaten while in Iraq and that his father has been harassed, presumably for political or religious reasons. 749 F.2d at 361–62. In *Yousif,* this court also found that an Iraqi citizen was not eligible for asylum where he testified that he was a Christian and he submitted an affidavit of his sister attesting to the fact that he had been beaten for refusing to join the Baath party. There were also allegations that his brother had been jailed for two weeks and his father had been beaten because they had refused to join the Baath party. 794 F.2d at 240–41.

■ Our review of these cases leads to the conclusion that the facts alleged by the petitioner in the instant case are not sufficient to establish a well-founded fear of persecution. We note that the immigration judge discounted petitioner's allegations concerning the attack due to inconsistencies in his testimony regarding the circumstances surrounding the assault. A determination by the trial judge that petitioner's testimony lacked credibility should not be disturbed on review absent a clear abuse of discretion. The Board of Appeals, however, went on to conclude that even if petitioner's allegations were accepted as true, this single incident is not sufficient to enable petitioner to avoid deportation under § 208:

Even assuming events happened as described by the respondent, he has failed to show a well-founded fear of persecution or a clear probability of persecution

in Iraq *regardless of the standard of proof applied.*

Board opinion. (Jan. 13, 1986), App. at 111 (emphasis added).

The Board went on to note that members of petitioner's family continue to live in Iraq, apparently unharmed. Moreover, petitioner never claimed to have been arrested or jailed for his religious or political beliefs. Nor did petitioner claim to have engaged in any political activity while in Iraq. Thus, we conclude that the evidence contained in the record when viewed in light of the controlling case law is not sufficient to support a well-founded fear of persecution.

█ We recognize that this court has recently remanded a factually similar case for reevaluation in light of the more generous well-founded fear standard used for establishing asylum. *See Munaim J. Dawood-Haio v. INS,* 800 F.2d 90 (1986). However, in that case, the court found that remand was necessary because the ALJ and the Board had unreasonably discredited all of the alien's allegations. In the instant case, we find that petitioner's allegations, even if true, are insufficient as a matter of law to support a request for asylum. The fact that the Board may have evaluated petitioner's request for asylum under the more stringent clear probability standard does not prevent us from affirming the order of deportation. *See, e.g., Yousif,* 794 F.2d at 244; *Youkhanna,* 749 F.2d at 361. *See also Farzad v. INS,* 802 F.2d 123, 125 (5th Cir.1986).

For the foregoing reasons, the order of the Board of Immigration Appeals is AFFIRMED.