947 F.2d 947
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Baljit Singh WADYAL, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 91-3229.
 United States Court of Appeals, Sixth Circuit.
 Nov. 1, 1991.
 
 Before KENNEDY and SUHRHEINRICH, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Petitioner Baljit Singh Wadyal seeks review of the decision of the Board of Immigration Appeals denying his application for asylum. For the reasons set forth below, we AFFIRM.
 
 
 2
 Petitioner is a thirty-two year old native and citizen of India. He was admitted into this country in October 1983, on an immediate relative petition filed by his father. His father has since returned to India. Petitioner has one brother who has obtained his United States citizenship by naturalization, another who is a permanent resident of the United States, while a third brother remains in India and works as a civil engineer for the government there. Both petitioner's mother and father live in India, his father having retired from employment with the Indian government sometime ago.
 
 
 3
 Petitioner faces these deportation proceedings as a result of his conviction for heroin trafficking, entered on September 30, 1987. He was sentenced to serve four years in prison. He has since been released. On March 24, 1988, petitioner was charged in an order to show cause, issued by respondent Immigration and Naturalization Service, with being deportable under Section 241(a)(11) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(11), as an alien convicted of controlled substance violations. After several delays, an Immigration Judge heard the case and determined that petitioner was deportable as charged, was ineligible for withholding of deportation, but merited the granting of asylum.
 
 
 4
 The Immigration Judge principally relied upon petitioner's testimony that while he was a student in India, he had been an official in the All India Sikh Student Federation ("AISSF"). This organization serves political, cultural and religious purposes, seeking to obtain greater autonomy and representation for the Sikhs and for Punjab. In the time since petitioner has come to the United States, the struggle between the government of India and the Sikhs in Punjab has become increasingly violent. Examples of the unrest include the Golden Temple massacre in 1984, and the assassination of Indira Gandhi by a Sikh in 1985. Following the Gandhi assassination, several Sikh organizations, including the AISSF, were banned.
 
 
 5
 Petitioner testified at his show cause hearing as to several grounds for his fearing persecution upon his return to India. He detailed several incidents in which he was questioned by police for participation in crimes about which he denies having any knowledge. He claims these investigations were either for intimidation purposes, or for obtaining information on the activities of the AISSF. Petitioner states that he was beaten in at least two of these investigations, once requiring hospitalization.
 
 
 6
 Petitioner also testified to the general governmental treatment of Sikhs, and politically active Sikhs in particular. Petitioner testified that the Indian government often conducts repression campaigns by the use of "false encounters," whereby a dissident is killed in an incident staged by the police. He testified that he believed that at least two of his fellow AISSF leaders, with whom he had often worked and appeared at public functions, were killed in such false encounters some years after petitioner left India. He fears a similar fate may befall him.
 
 
 7
 Petitioner also introduced the testimony of a longtime friend, Salvader Singh, a free lance writer in this country on a journalist visa. Singh testified to the general conditions of civil unrest and conflict between the government of India and the Sikhs. Singh corroborated petitioner's testimony as to the general conditions in India, but appeared to undermine his claims as to the fate of his murdered co-workers in the AISSF. Singh stated that it was at best unclear what had happened to the two, and that he had heard that they had been killed in gang warfare, rather than at the hands of government oppression. Neither petitioner nor Singh could state a specific source of information other than that they had heard of it second hand and had seen something in the newspapers about it. No newspaper stories were produced.
 
 
 8
 The Immigration Judge who heard petitioner's testimony ruled that he had presented credible testimony establishing a reasonable fear of persecution should he return to India. The Immigration Service appealed this decision to the Board of Immigration Appeals, which reversed. The Board determined, in its de novo review of the case, that petitioner had not established his eligibility for status as a refugee under 8 U.S.C. § 1101(a)(42)(A), and that, additionally, in the exercise of discretion, he did not merit asylum. The Board relied principally upon petitioner's inconsistencies and shortcomings in the record as to his "well-founded fear of persecution," and upon his conviction for trafficking in controlled substances outweighing any equities in his favor. Petitioner appeals the decision of the Board.
 
 
 9
 In deportation hearings, the alien bears the burden of proving that he is eligible for asylum and that he merits the relief of asylum as a matter of discretion. 8 C.F.R. §§ 208.5, 242.17(c); Gumbol v. INS, 815 F.2d 406, 408-09 (6th Cir.1987). Under section 208(a) of the Immigration and Nationality Act, the Attorney General has discretion to grant asylum if it is determined that an alien is a refugee within the meaning of 8 U.S.C. § 1101(a)(42)(A). INS v. Cardoza-Fonseca, 480 U.S. 421 (1987). That section defines a refugee as a person who is unable or unwilling to return to his home country because of persecution or a well-founded fear of persecution on account of his race, religion, nationality, membership in a particular social group, or political opinion. The "well-founded fear of persecution" finding has been held to entail a generous standard, less than clear probability, and is provable by "specific facts, either through objective evidence or through persuasive credible testimony." Gumbol, 815 F.2d at 412. Internally inconsistent testimony or very generalized assertions of fear are not sufficient. The alien must establish circumstances such that a reasonable person in that position would fear being singled out on account of one of the five grounds (race, religion, etc.). Asylum determinations require a two-step analysis, therefore, first to determine whether the applicant meets the statutory eligibility requirement of refugee status based upon the well-founded fear of persecution, and second to determine whether an alien who meets that requirement merits asylum in the exercise of discretion. Gumbol, 815 F.2d at 409-12.
 
 
 10
 This Court has applied the "substantial evidence" test to review the Board's finding of whether an alien has established a well-founded fear of persecution and met the definition of "refugee" under 8 U.S.C. § 1101(a)(42)(A). Dawood-Haio v. INS, 800 F.2d 90 (6th Cir.1986). "Substantial evidence" has been held to be less than the weight of the evidence, and the "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." American Textile Mfrs. Inst. v. Donovan, 452 U.S. 490, 523 (1981) (quoting Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966)). This Court is not free to overturn the Board's ruling simply because it would decide the case differently. The fact that the Board reversed the decision of the Immigration Judge does not alter our standard of review of the Board's finding. Blackwood v. INS, 803 F.2d 1165, 1168 (11th Cir.1986) ("The standard of review remains unchanged by [a] disagreement between the Immigration Judge and the Board. If these two interpret the evidence differently, we cannot choose freely between the two interpretations.")
 
 
 11
 Using this analysis to review the Board's finding that petitioner had not sufficiently established his status as a refugee, we cannot say that it was not supported by substantial evidence, or was clearly erroneous. The Board articulated the proper standard of review. We have no reason to believe it was merely paying lip service to the appropriate standard and instead surreptitiously applying another, more rigorous standard, as petitioner contends. The Board expressly articulated several factors favorable to petitioner's claim of well-founded persecution, such as the unrest between the Sikhs and the Indian government, as well as several factors tending to undermine his claim. These included the absence of documentation as to his injuries received in beatings; the fact that, according to his own testimony, his arrests were for the investigation of a murder; the absence of the newspaper stories relied upon by petitioner and his witness in their beliefs as to the possible deaths of fellow AISSF members at the hands of the government; the apparent validity of petitioner's passport and police clearance report; and several inconsistencies in positions taken by petitioner in his various forms and filings relative to his alien status in the United States.
 
 
 12
 We do not read the Board's finding as relying exclusively upon any one of these factors. Rather, they are all factors or elements in the decisional matrix an expert agency must intrinsically employ in making such findings. The mere fact that the Board did not accord the same weight and deference to various factors as another panel might have, or as petitioner would have liked it to, does not mean it applied an incorrect standard, ignored the weight of the evidence and was unsupported by substantial evidence. We simply do not find evidence of an incorrect legal standard or an absence of substantial evidence to support the decision.
 
 
 13
 Petitioner also asserts that the Board erroneously made credibility findings contrary to those of the Immigration Judge, and therefore committed reversible error. We cannot uphold the Board's power to review de novo yet require it to strictly conform its findings to all inferences derivable from an Immigration Judge's credibility findings, as petitioner's argument would have us do.
 
 
 14
 Further, the Board in this case did not necessarily reverse the credibility determination of the Immigration Judge. The Board determined that the fear of persecution was not "well-founded." It did not necessarily find it to be insincere, or even implausible, but rather simply not "well-founded." Were we to accept petitioner's reasoning, "well-founded" would come to mean "sincerely held," no matter how unfounded the fear may be. We decline to adopt such an analysis.
 
 
 15
 The Board further held that, even if petitioner had established his status as a refugee, he did not merit the granting of asylum in the exercise of discretion. Our review of the grant or denial of asylum in the exercise of discretion is even more circumspect than the substantial evidence analysis. We can reverse only if we find that the Board was clearly erroneous and acted arbitrarily and capriciously in abusing its discretion. Here, the Board stated that although there may have been some equities weighing in favor of petitioner's claim, they were insufficient to outweigh the serious nature of his conviction for trafficking in controlled substances. Although petitioner is correct in noting that the Board has abandoned its practice of pretermitting asylum claims on the grounds of such a conviction, the Board is in no way obligated to disregard or diminish the weight of such evidence. Such a conviction remains a factor to be included in the Board's calculus, and we have no reason to believe it was used incorrectly in the present case. The board explicitly stated its decision calculus as resting on the evaluation that "[n]o countervailing favorable considerations sufficient to offset the serious adverse factor ... have been shown...."
 
 
 16
 We cannot find an abuse of discretion on this record, and therefore AFFIRM the decision of the Board of Immigration Appeals.