**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 05a0364n.06**
**Filed: May 6, 2005**

**Case No. 04-3258**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ROZAN SHABAJ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | **ON PETITION FOR REVIEW** |
| v. | ) | **FROM AN ORDER OF THE** |
| | ) | **BOARD OF IMMIGRATION** |
| ALBERTO GONZALES, Attorney General, | ) | **APPEALS** |
| | ) | |
| Respondent. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| | ) | |

**BEFORE: SUHRHEINRICH, BATCHELDER and GIBSON\*, Circuit Judges.**

   **ALICE M. BATCHELDER, Circuit Judge.** Petitioner Rozan Shabaj ("Shabaj"), who claims to be a citizen of Albania, appeals the decision of the Board of Immigration Appeals ("the Board") denying Shabaj's claims for asylum, withholding of removal, and protection under the Convention Against Torture. At the asylum hearing, the IJ found Shabaj incredible, but ruled that, even assuming Shabaj's credibility, he failed to establish a well-founded fear of persecution. Because the record contains no evidence that would compel a contrary finding on either of these grounds, we deny the petition for review.

**I.**

   We begin by noting that Shabaj has been ill-served by his attorney, Mr. Terence Hoerman

---

   \*The Honorable John R. Gibson, Circuit Judge for the United States Court of Appeals, Eighth Circuit, sitting by designation.

of Detroit, Michigan.  Mr. Hoerman's brief on behalf of his client is obviously a canned brief that, in most sections, has not even been tailored to Shabaj's case.  Nowhere does it mention Shabaj by name, and the Argument section, which is barely a page, refers to Shabaj as a female, which he certainly is not, and asserts that the IJ found that "petitioner . . . testified credibly," which the IJ explicitly did not.  Mr. Hoerman incorrectly claims this court's jurisdiction under the Federal Rules of Appellate Procedure rather than the immigration statutes, he provides a Standard of Review ("Standart of Review," he calls it) that is useless, and he fails to cite a single Sixth Circuit case.

We are able to quote Mr. Hoerman's Statement of Facts in its entirety, because it is practically non-existent:

> Petitioners are citizens of Albania who entered the United States illegally of [sic] April 21, 2000.  Since arriving in the U.S. petitioners never left the country.  During trial petitioner presented evidence and testimony that he was a member of the Democratic Party and was persecuted because of this.  He stated that he feared for his life.

(Petitioner's Br. at 6).  These 55 words might give one the impression that there are several people seeking asylum in this case, but there is only Shabaj.  Mr. Hoerman's brief contains no factual citations to the joint appendix, but this is perhaps understandable, inasmuch as the brief provides no facts.  Under these circumstances, it came as no surprise to this court when, six weeks before the scheduled oral argument in Shabaj's case, Mr. Hoerman requested that oral argument be waived.

Despite Mr. Hoerman's failure to present his client's case competently, we have taken it upon ourselves to carefully review the record, in order to address Shabaj's appeal on its merits.

## II.

Shabaj is a young man in his mid-twenties.  He claims that he is an Albanian citizen, and

2

that he was a soldier in the Albanian Army in the late 1990's and a member of Albania's Democratic Party beginning in 2000. Shabaj testified that in March 1997 an incident occurred in which his army unit was forced to put down its weapons and leave the area. In his asylum application, Shabaj said he was beaten and bruised at this time by a masked gang of attackers, but in his testimony before the IJ he said that the attackers were either civilians or criminals from the prisons, and that his unit laid down its weapons and fled without injury. Shabaj testified that he then fled to a Franciscan Church for safety, where he was hidden by nuns. In his asylum application, Shabaj stated that later that night gangs came looking for him screaming "we'll kill you democrats," but his testimony before the IJ did not mention this statement and was unclear as to whether it was police or gangs who came looking for him.

Shabaj testified that he attended a demonstration in September 1998 after a political leader had been assassinated, and that on his way home police stopped him, "flinged him against something," and "bruised" him as a result. Shabaj also testified that in October 2000 he was working at an election office with his cousin, when a member of the Socialist Party, Cjeto Cutaj, "came to grips" with Shabaj's cousin. Shabaj testified that he intervened to help and was "banged" against the wall and told that "later it would be [his] turn." Shabaj also testified that two weeks later Cutaj came to Shabaj's home looking for either him or his father, but found only his grandmother. Shabaj's asylum application, however, indicated that it was "two policemen" who came looking for him, and that they encountered his grandfather, rather than his grandmother.

Shabaj testified that he then left Albania for Yugoslavia, where he stayed for five or six months, before passing through Albania on his way to the United States. On April 3, 2001, Shabaj was caught attempting to enter the United States with a fake Swedish passport. On August 21, 2002,

3

the IJ denied his applications for asylum, withholding of removal, and relief under the Convention Against Torture. Shabaj appealed this ruling to the Board, which summarily affirmed the IJ's decision.

## III.

The Board's findings of fact are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Ali v. Reno*, 237 F.3d 591, 596 (6th Cir. 2001) (quoting 8 U.S.C. § 1252(b)(4)(B)). Under this deferential standard, we may not reverse the Board simply because we disagree with its apprehension of the facts. *Koliada v. INS*, 259 F.3d 482, 486 (6th Cir. 2001). Rather, we must find that the evidence compels a finding that the Board was wrong.[1] *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1, 483-84 (1992). An alien's own testimony, without corroboration, can be sufficient to support an application for asylum or withholding of removal, where the testimony is believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for the alien's fear. *Perkovic v. INS*, 33 F.3d 615, 621 (6th Cir. 1994).

The IJ found Shabaj's testimony incredible, and the record certainly does not compel a contrary finding. In fact, the record is fraught with examples of inconsistencies between Shabaj's asylum application and his testimony, and internal inconsistencies in his testimony. Regarding the army incident, Shabaj has claimed that he was beaten and that he was not, that his weapon was taken and that he laid it down voluntarily, that gangs came looking for him and that it was the police, and that his pursuers threatened to "kill you democrats" and that they said something else instead. Regarding the aftermath of the election center incident, Shabaj has been unclear as to whether it was

---

[1]Under the Board's summary-affirmance procedure, the IJ's decision is the final agency order. 8 C.F.R. § 1003.1(e)(4)(ii). We therefore evaluate the IJ's findings and reasoning as that of the Board. *Denko v. INS*, 351 F.3d 717, 730 (6th Cir. 2003).

the police or the Socialists who came to his house, whether they confronted his grandfather or his grandmother, and whether they were looking for Shabaj or his father.

Moreover, both of Shabaj's parents lived in Albania while these events were allegedly occurring, and both lived in the United States less than 25 minutes from Shabaj's immigration hearing, yet neither of them appeared to corroborate Shabaj's shaky testimony. In fact, they did not even provide written statements on his behalf. Similarly, Shabaj's grandparents, who live in Albania, were in a position to lend credence to some of his testimony, yet neither submitted a written statement on his behalf. In addition, Shabaj was caught presenting a fake Swedish passport, possessed a Yugoslavian passport, and was unable to find his Albanian passport, causing the IJ to hypothesize that Shabaj is actually Yugoslavian rather than Albanian. None of these facts inspires confidence in Shabaj's credibility.

In light of Shabaj's vague, conflicting testimony, and his lack of corroboration, we are certainly not compelled to disturb the IJ's finding that Shabaj was not credible. *See Gumbol v. INS*, 815 F.2d 406, 412 (6th Cir. 1987) ("A determination by the trial judge that petitioner's testimony lacked credibility should not be disturbed on review absent a clear abuse of discretion."). Therefore, we are not compelled to find that Shabaj has demonstrated past persecution or a well-founded fear of persecution necessary to establish his eligibility for asylum. *See Perkovic*, 33 F.3d at 621 (requiring that, for an alien's uncorroborated testimony to support his asylum application, it must be "believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for his fear") (internal quotation omitted); *Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir. 1998).

Because a request for withholding of removal requires Shabaj to meet a more stringent standard than is required for asylum, his failure to demonstrate that he is eligible for the latter is dispositive of his claim of eligibility for the former. *See Castellano-Chacon v. INS*, 341 F.3d 533, 545, 551-52 (6th Cir. 2003); *see also* 8 C.F.R. §§ 208.16(b)-(c), 208.18(c).

**IV.**

Accordingly, we **DENY** the petition for review.