**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0412n.06
Filed: June 19, 2006

**No. 05-3172**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| **MARASH KALAJ, et. al.,** ) | |
| ) | |
| **Petitioners-Appellants,** ) | |
| ) | **ON APPEAL FROM THE** |
| **v.** ) | **BOARD OF IMMIGRATION** |
| ) | **APPEALS** |
| **ALBERTO R. GONZALES,** ) | |
| ) | **O P I N I O N** |
| **Respondent-Appellee.** ) | |
| ) | |

**BEFORE: KEITH, MERRITT, and DAUGHTREY, Circuit Judges.**

**DAMON J. KEITH, Circuit Judge**. Marash Kalaj, the lead petitioner, his wife Luce Kalaj and their son Ferdi Kalaj (collectively "the Kalajs" or "Petitioners") appeal the order of the immigration judge ("IJ") denying their application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). The Kalajs also allege that the IJ violated their Fifth Amendment due process rights. For the reasons set forth below, we **AFFIRM** the IJ's order and deny the Kalajs' petition for review.

**I.     BACKGROUND**

The Kalajs are natives and citizens of Albania. On December 7, 2000, Marash Kalaj and his family left Albania and traveled to the United States on B-2 visitor visas. On March 6, 2001, their visas expired.

On July 9, 2001, the Immigration and Naturalization Service ("INS")[1] issued a Notice to Appear contending that the Kalajs were removable for overstaying their visas. Petitioners appeared before the IJ on September 19, 2001 admitting the charges in the notice. At the hearing, the INS filed additional charges contending that Petitioners fraudulently procured their visas.

After the hearing, on October 3, 2000, the Kalajs filed an application for asylum. The application alleged that they were persecuted on account of their political affiliation with the Albanian democratic party. On June 9, 2003, while the Petitioners' asylum application was pending, Mr. Kalaj's sister died in Albania. On June 16, 2003, Mr. Kalaj applied for and obtained an authorized advanced parole to return to Albania for his sister's funeral. He left the United States entering Albania through Yugoslavia on June 21, 2003 and returned on July 9, 2003. The Albanian authorities did not harass Mr. Kalaj while he was there.

On October 6, 2003, the IJ held a hearing on the removal charges and the Kalajs' application for asylum. During the hearing, Mr. Kalaj provided the only testimony in support of their asylum application. Mr. Kalaj testified about four main incidents of persecution on account of his affiliation with the democratic party.

---

[1]On March 1, 2003, the functions of the Immigration and Naturalization Service were transferred from the Department of Justice to three agencies (United States Immigration and Customs Enforcement, United States Customs and Border Protection, and United States Citizenship and Immigration Services) to the newly formed Department of Homeland Security ("DHS"). *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002). In addition, Title 8 of the Code of Federal Regulations was reorganized and amended to reflect the resulting division of jurisdiction between DHS and the Executive Office for Immigration Review, which includes the immigration courts and the Board, and which remained an agency within the Department of Justice under the direction of the Attorney General. *See* 68 Fed. Reg. 10349 (March 5, 2003) (available at 2003 WL 724287).

Mr. Kalaj and his wife have been members of the democratic party since 1991. In December 1990, Mr. Kalaj participated in a political demonstration in Shkoder. After the demonstration, the police allegedly detained him for three days. During his detention, he did not sustain any injuries, nor did he seek medical treatment. In 1997, Mr. Kalaj and his sons campaigned against the socialist party. During the campaign, Mr. Kalaj alleged that the police removed him from his car and severely beat his son, Pllumb.

The democratic party leader was assassinated in September 1998. When Mr. Kalaj and others were traveling to the funeral, unidentified masked men opened fire on his van. He was not injured. In another incident, in 1999 at a democratic party rally, Mr. Kalaj alleges that the police fired their weapons into the crowd and arrested his two sons. He was not injured, nor did he seek medical treatment.

The Kalajs allege that a series of incidents in 2000 prompted them to leave Albania. In November 2000, Mr. Kalaj spoke at a democratic rally. At this rally, the police arrested, detained, and beat him with a wooden stick. During this same time frame, his son, Pllumb, published a newspaper editorial criticizing the socialist government. Shortly thereafter the police severely beat his son. After these incidents, the Kalajs obtained B-2 visas to come to the United States.

On April 27, 2003, the IJ issued an order denying the Kalaj's petition for asylum, withholding of removal, and relief under the CAT. In an oral opinion, the IJ noted that Mr. Kalaj repeatedly refused to cooperate during the hearing; and rejected his testimony as vague, non-specific, and uncorroborated with credible evidence. Further, the IJ found that there was insufficient

detail in Mr. Kalaj's testimony to assume that he was singled out in any way or persecuted. The IJ concluded that the Kalajs did not have a well-founded fear of future persecution where Mr. Kalaj returned to Albania for his sister's funeral and still owned a home in Albania.

The IJ also denied the Kalajs claims for withholding of removal and relief under the CAT. The IJ designated Albania as the country for removal. On August 13, 2004, Petitioners filed a timely appeal with the BIA. On February 3, 2005, the BIA summarily affirmed the IJ's decision. A timely petition for review was filed with this Court on February 14, 2005.

## II.     ANALYSIS

This Court reviews the decision of the IJ directly when the BIA affirms the IJ's decision without an opinion. *Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005); *Hasan v. Ashcroft*, 397 F.3d 417 (6th Cir. 2005). The denial of a petition for asylum is reviewed to determine whether the IJ's decision is supported by substantial evidence. *Daneshvar v. Ashcroft*, 355 F.3d 615, 624 (6th Cir. 2004). Under this standard, this Court must uphold the IJ's findings as long as it is "supported by reasonable, substantial, probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). Reversal of a factual determination is only warranted when the reviewing court finds that the evidence not only supports a contrary conclusion, but compels it. *Id, see also Singh*, 398 F.3d at 402; *Mullai v. Ashcroft*, 385 F.3d 635, 638 (6th Cir. 2004); *Klawitter v. INS*, 970 F.3d 149, 152 (6th Cir. 1992). Petitioners appeal the denial of their asylum application on two grounds: (1) there was credible evidence to support their petition for asylum, withholding of removal, and relief under the CAT; and (2) the IJ failed to provide them a fair hearing in violation of their Fifth Amendment due process rights.

### A.    Petition for Asylum

The Kalajs appeal the IJ's decision denying their petition for asylum. In denying the Kalajs relief, the IJ determined that Mr. Kalaj was not credible, and that even if he was found to be credible, he failed to establish a well-founded fear of persecution.

### 1.    Adverse Credibility Determination

The IJ found that the Kalajs did not present credible evidence in support of their claim for asylum. Credibility determinations are considered findings of fact and are reviewed under the substantial evidence standard. *Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004). The credibility determination "must be supported by specific reasons," and "[a]n adverse credibility finding must be based on issues that goes to the heart of the applicant's claim." *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004) (citations omitted); Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252(b)(4)(B) (2005) (stating that a credibility determination is conclusive unless any reasonable factfinder would be compelled to conclude to the contrary).

There was substantial evidence to support the IJ's finding that Mr. Kalaj's testimony was not credible. Specifically, the IJ stated that Kalaj's testimony was "vague, evasive, non-specific, and . . . lacking detail." Moreover, even though the Kalajs submitted an evidentiary packet "it was not served properly, . . . [and] none of the documents in it were authenticated."

Assuming arguendo that Mr. Kalaj was credible, the IJ correctly found that the Kalajs' membership in the democratic party, alone, was not enough evidence to show that they were persecuted. They were required to show a direct connection between their political affiliation and persecution. The IJ correctly noted that Mr. Kalaj did not have any evidence to dispute the fact that

the police presence at the political rallies in 1990, 1992, and 2000 was simply to control the crowd. Moreover, when Kalaj alleged he was injured, he had no evidence to corroborate his testimony. Mr. Kalaj directly admitted that he was never injured, nor did he seek medical treatment for any of the alleged incidents. In 2000, when Mr. Kalaj was allegedly beaten with wooden sticks, he did not have any hospital records to support this allegation. Accordingly, there was substantial evidence to support the IJ's holding that the Kalajs were not subjected to past persecution.

### 2. Well-Founded Fear of Persecution

The Kalajs claim that there was substantial evidence to support the finding that if they were sent back to Albania, they would be persecuted. To establish a well-founded fear of future persecution, an alien must show that he has a genuine fear, and that a reasonable person in his circumstances would fear persecution upon his return to his native country. *Perkovic v. INS*, 33 F.3d 615, 620-21 (6th Cir. 1994). Specifically, an applicant must establish that: (1) he or she has a fear of persecution in his or her country of nationality on account of . . . political opinion; (2) there is a reasonable possibility of suffering such persecution if he or she were to return to that country; and (3) he or she is unable or unwilling to return to that country because of such fear. 8 C.F.R.§ 208.13(b)(2). An alien seeking asylum based on a well-founded fear of future persecution must show that he possesses both a subjective genuine and objective reasonable fear of persecution. The Kalajs argue that the IJ failed to consider their son's persecution as evidence that they would be subjected to future persecution on account of their familial status and improperly considered Mr. Kalaj's receipt of advance humanitarian parole to attend his sister's funeral in Albania.

### a. Familial Status

The first issue is whether the IJ failed to give sufficient weight to their son's favorable asylum petition. The Kalajs argue that their son's receipt of asylum in the United States is evidence that they would be persecuted if they returned to Albania. They contend that, under 8 C.F.R. § 208.13(b)(2)(iii)(A), the fear of future persecution need not be specific to the individual applicant if "[t]he applicant establishes that there is a pattern or practice . . . of persecution of a group of similarly situated to the applicant on account of a protected ground." 8 C.F.R. § 208.13(b)(2)(iii)(A).

In *Akhtar v. Gonzales*, 406 F.3d 399, 403 (6th Cir. 2005), this Court affirmed the IJ's finding that the son of a murdered political activist, who was apolitical, could not establish that he would be persecuted because of his own political affiliation or as a member of his own immediate family who involved in political activities. *Id*. at 403. This Court stated that "[a]lthough acts of violence against an alien's family members may demonstrate a well-founded fear of persecution, absent a pattern of persecution tied to the asylum applicant, himself or herself, acts of violence against family members do not necessarily demonstrate a well-founded fear of persecution." *Id*. Although relevant, familial status alone cannot support a claim for persecution. *Id*. at 406 (citing *Ciorba v. Ashcroft*, 323 F.3d 539, 545 (7th Cir. 2003)).

Similarly, even though the Kalajs' son was persecuted, the Kalajs failed to offer evidence that their claims standing alone would support a grant of asylum. The government correctly contended that the evidence of their son's persecution is highly suspect where the affidavit from his son was not properly notarized and Mr. Kalaj could not give detailed testimony regarding his son's persecution. Also, although there is a distinction here that Mr. Kalaj is not apolitical like the

petitioner in *Akhtar*, there must be familial affiliation plus reasonable, substantial, and probative evidence on the record as a whole that the Kalajs were persecuted. Where the Kalajs could not present credible evidence that they would be persecuted in the future, they cannot establish a claim for future persecution. Thus, the IJ properly disregarded their claim of asylum based on their son's successful asylum claim to support their petition for asylum.

### b. Return to Albania on Humanitarian Parole

The Kalajs argue that the IJ improperly considered Mr. Kalaj's advance humanitarian parole to return to Albania to bury his sister. They contend that 8 U.S.C. § 1182[2] requires that when an applicant returns to this country from humanitarian parole his case should be dealt with in the same manner as that of any other applicant for admission to the United States.

The government argues that the Kalajs construe the statute too broadly and state that the implementing regulation, 8 C.F.R. § 208.8, narrowly provides that "[a]n applicant who leaves the United States pursuant to advance parole under § 212.5(f) of this chapter and returns to the country of claimed persecution shall be presumed to have abandoned his or her application, unless the applicant is able to establish compelling reasons for such return." The government further contends that, under 8 U.S.C. § 1101(a)(42)(A) which provides the definition of a refugee, the Kalajs must be fully unable to return to Albania because of persecution. Thus, even though Mr. Kalaj returned to Albania under an advance parole, he can no longer establish future persecution.

---

[2]8 U.S.C. § 1182 provides that "[t]he Attorney General may not parole into the United States an alien who is a refugee unless the Attorney General determines that compelling reasons in the public interest with respect to that particular alien require that the alien be paroled into the United States rather than be admitted as a refugee under section 1157 of this title."

In support of its argument, the government cites to two cases outside of this Circuit. In *Blanco de Belbruno v. Ashcroft*, 362 F.3d 272, 285 (4th Cir. 2004), the court held that an asylum applicant who returned to Guatemala with her daughter to obtain medical treatment willingly returned to country of origin and was not a refugee for purposes of her asylum application. Also, in *Marquez v. INS*, 105 F.3d 374, 380 (7th Cir. 1997), the Seventh Circuit found that an asylum applicant who returned to the Philippines voluntarily on two occasions after the alleged persecution was not entitled to asylum because he did not have a well-founded fear of persecution.

Both of these cases can be distinguished from this case. In *Blanco* and *Marquez*, the petitioners returned to their country under circumstances which were not compelling, namely cheap medical treatment and to see family members. In this case, Mr. Kalaj returned for nineteen days to bury his sister and attend the funeral services. This consideration, however, does not effect the outcome of the case where overall the Kalajs did not present specific, reliable evidence in support of their asylum claims.

Accordingly, since the IJ's consideration of the Kalajs' advance parole was not determinative of their claim of future persecution, the IJ's consideration of advance parole does not effect the fact that the Kalajs' claim that they have a well-founded fear of future persecution was not supported by substantial evidence.

**B.      Eligibility for Withholding of Removal**

The Kalajs argue that the IJ erred insofar as he determined that they did not meet their burden for withholding of removal. The IJ held that "[i]nasmuch as the petitioners have failed to establish the lower burden of proof required for asylum, it follows that they have also failed to satisfy the

clear probability standard of eligibility required for withholding of removal." (J.A. 38) (citing *INS v. Stevic*, 467 U.S. 407 (1984)). To establish entitlement to withholding of removal, under §241(b)(3) of the INA, (codified at 8 U.S.C. § 1231(b)(3)), the Kalajs were required to show a clear probability of persecution through presentation of evidence establishing "that it is more likely than not that [they] will be subject to persecution if forced to return to [their] native land." *Gumbol v. INS*, 815 F.2d 406, 411 (6th Cir. 1987); *see also Castellano-Chacon v. INS*, 341 F.3d 533, 545 (6th Cir. 2003). The clear probability standard is more stringent, and thus harder for the alien to meet, than the well-founded fear of persecution standard used in asylum cases.

As described above, the Kalajs cannot establish that they will be persecuted when they return to Albania. Thus, they cannot meet the higher standard, clear probability, of eligibility required for withholding of removal under 8 U.S.C. § 1231(b)(3) (2002). *Vasha v. Gonzales*, 410 F.3d 863, 875 (6th Cir. 2005) (citing *Koliada v. INS*, 259 F.3d 482, 489 (6th Cir. 2001)).

### C.      Convention Against Torture

The Kalajs also argue that the IJ erred because he determined that they were not eligible for relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, December 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85, *implemented by* Foreign Affairs Reform And Restructuring Act of 1998, Pub. L. No. 105-277, Dic. G., Tit. XXII, § 2242, 112 Stat. 2681-822 (codified at 8 U.S.C. § 1231 note). Article 3(1) of the CAT provides that "[n]o State Party shall expel, return ('refouler') or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." In order to qualify for protection under the CAT, an applicant has the burden to show

that it is "more likely than not that he or she would be tortured if removed to the proposed country of removal." *Ali v. Reno*, 237 F.3d 591, 596 (6th Cir. 2001) (quoting 8 C.F.R. § 208.16(c)(2)). In making this assessment, evidence to be considered includes evidence of past torture inflicted upon the applicant, evidence of gross, flagrant or mass violations of human rights within the country of removal, and other relevant information regarding conditions in the country of removal." 8 C.F.R. § 208.16(c)(3)(i) - (iv). The Kalajs did not provide credible evidence of past torture, nor do the current Albanian country reports establish a pattern of persecution on account of political affiliation. Thus, it is not more likely than not that the Kalajs will be tortured if removed to Albania.

### D.      Fifth Amendment Due Process

The Kalajs allege that IJ mischaracterized Mr. Kalaj's testimony in violation of Fifth Amendment due process clause of the Constitution. This Court reviews alleged due process violations *de novo*. *Ivezaj v. INS*, 84 F.3d 215, 220 (6th Cir. 1996); *see also Ahmed v. Gonzales*, 398 F.3d 722, 725 (6th Cir. 2005) (citations omitted).

The Fifth Amendment guarantees of due process require that aliens in deportation hearings receive a full and fair hearing. *Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001); *Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001); *see also*, *Scorteanu v. INS*, 339 F.3d 407, 413 (6th Cir. 2003). Under this standard, the Kalajs must meet the high standard of proving that a defect in their deportation proceedings was fundamentally unfair. They must show that the alleged error prejudiced their case. Since IJ's have broad discretion in conducting their hearings, the standard of review is highly deferential. *Ahmed*, 398 F.3d at 725 (citing *Mikhailevitch*, 146 F.3d at 391)). Given the highly deferential standard of review, "ensuring due process at a hearing before an

immigration judge may be particularly important in immigration cases given such a high presumption of correctness on appeal." *Id*. at 726.

The Kalajs argue that the IJ was selectively inattentive to Mr. Kalaj's testimony and manufactured his own set of facts. Specifically, the Kalajs argue that the IJ mischaracterized their evidence of persecution as only constituting general arrests dealing with crowd control. In support of their argument, the Kalajs cite *Ahmed*, a case in which this Court found that the IJ's misunderstanding of the testimony violated the petitioner's due process rights. This Court found that "a hearing where an immigration judge cannot be said to have fairly considered the evidence presented by the petitioners is one where those petitioners have been deprived of due process." *Ahmed*, 398 F.3d at 725 (citing *Amadou v. INS*, 226 F.3d 724, 727 (6th Cir. 2000); *Gonzales v. Zubrick*, 45 F.2d 934, 936-937 (6th Cir. 1930)).

*Ahmed* can be distinguished from the facts of this case. In *Ahmed*, the IJ denied the petitioner's asylum claim based solely on the adverse credibility finding. During the hearing, "[t]he judge recognized and stated early on that he was having difficulty understanding [the petitioner's] testimony." *Id*. at 727. By contrast in this case the IJ based the denial of asylum on (1) Mr. Kalaj's evasive, vague and non-specific testimony; (2) Mr. Kalajs failure to present adequate evidence of past persecution; and (3) the Kalajs failure to present any corroborating documentary evidence. The three independent reasons for the denial of asylum support the conclusion that the IJ did not deny the Kalajs' due process rights. Accordingly, the Kalajs were given a full and fair hearing. Thus, the IJ did not mischaracterize Mr. Kalaj's testimony in a manner that violated their due process rights.

**III.    CONCLUSION**

For the foregoing reasons, we affirm the IJ's order denying the Kalajs asylum and

withholding of removal, and relief under the CAT and deny their petition for review.