914 F.2d 1494
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Samir Zeia DALOU Hana Jerjis Petitioners,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 89-4076.
 United States Court of Appeals, Sixth Circuit.
 Sept. 21, 1990.
 
 Before KRUPANSKY and BOGGS, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Petitioners Samir Zeia Dalou and Hana Jerjis, who are husband and wife as well as natives and citizens of Iraq, seek review of a final order of the Board of Immigration Appeals (Board or BIA) dismissing their appeal from an order of an Immigration Judge (IJ) denying their applications for withholding of deportation under section 243(b) of the Immigration and Nationality Act (Act), 8 U.S.C. Sec. 1253(h), as amended, and for asylum under section 208(a) of the Act, 8 U.S.C. Sec. 1158, as amended.
 
 
 2
 Petitioners contend that both the Immigration Judge and the BIA denied them a fair hearing on their claims for relief. Furthermore, petitioners assert that the IJ applied an incorrect legal standard in evaluating their claim for asylum and that he rejected without basis petitioners' uncontroverted evidence of persecution. Finding that substantial evidence supports the BIA's decision denying petitioners' applications for asylum and withholding of deportation, we affirm.
 
 I.
 
 3
 Petitioners were admitted into this country on April 19, 1982 as nonimmigrant visitors for pleasure from Iraq. In August of 1984, petitioners were served with orders to show cause charging them with remaining in the United States for a longer period than authorized by the Immigration and Naturalization Service (INS).
 
 
 4
 On September 18, 1984, a deportation hearing was convened before an Immigration Judge in Detroit, Michigan. Petitioners were represented by counsel and provided an interpreter. Petitioners' counsel conceded deportability and renewed petitioners' applications for asylum and withholding of deportation. After the deportation hearing was continued to February 11, 1985, Mr. Dalou was given the opportunity to take the stand and he testified in support of his asylum claim. Specifically, Mr. Dalou testified that when he returned to Iraq after a 1980 visit to the United States he was questioned by Iraqi authorities on three occasions regarding his visit to the United States. Mr. Dalou further testified that he was a member of a Christian club that was closed by the Iraqi government. Finally, Mr. Dalou stated that about two weeks after he left Iraq in 1982, the government closed his restaurant and bar business. While maintaining that it would be "very harmful" if he returned to Iraq, Mr. Dalou nonetheless conceded that after his return to Iraq from the United States in 1982, his passport had been renewed and he had made many trips to other countries without being harassed by Iraqi authorities.
 
 
 5
 Thereafter, on April 23, 1985, the IJ issued a decision finding both petitioners to be deportable under 8 U.S.C. Sec. 1251(a)(2) for having remained in the United States for a longer period than permitted. Thus, petitioners' applications for asylum pursuant to 8 U.S.C. Sec. 1158 and withholding of deportation pursuant to 8 U.S.C. Sec. 1253(h) were denied although the IJ did grant their request for voluntary departure.
 
 
 6
 On April 30, 1985, petitioners appealed the IJ's decision to the BIA, alleging that the IJ applied the incorrect standard of proof in adjudicating petitioners' applications for asylum and withholding of deportation.
 
 
 7
 On November 20, 1985, the BIA denied petitioners' applications for asylum and withholding of deportation and dismissed their appeal. The Board noted that the IJ had applied the incorrect "clear probability of persecution standard" with regard to the application for asylum, but the Board remedied the IJ's error by reviewing petitioners' asylum application de novo pursuant to the "well-founded fear of persecution" standard as enunciated in Matter of Mogharrabi, Int.Dec. 3028 (BIA 1987). The BIA concluded that even under the Mogharrabi standard, which comported with the United States Supreme Court's decision in INS v. Cardoza-Fonseca, 480 U.S. 421 (1987) wherein the "well-founded fear of persecution" standard for asylum cases was held to be more generous than the clear probability standard utilized in withholding of deportation cases, petitioners had failed to establish a "well-founded fear of persecution."
 
 
 8
 The Board relied on three reasons for denying petitioners' applications for asylum and withholding of deportation. First, the Board concluded that petitioners failed to establish that a reasonable person who belonged to a Christian club closed by the Iraqi government should fear persecution by the government in the absence of any evidence that after the club was closed any further actions were taken against club members. In arriving at this conclusion the Board noted that no evidence was presented demonstrating that the Iraqi government had a policy of persecuting Christians, and pursuant to the IJ's findings, that while the Iraqi government prohibited club meetings held outside of the regular Christian services, churches were open for those wishing to attend scheduled services.
 
 
 9
 Secondly, the BIA found that since Mr. Dalou testified that everyone coming from the United States in 1980 was questioned by Iraqi authorities, such questioning relating to Mr. Dalou's 1980 visit to the United States was not unreasonable nor demonstrated persecution by the Iraqi government. In support of this factual determination the Board found that the renewal of Mr. Dalou's passport by the Iraqis after his 1980 visit to the United States demonstrated that the Iraqi authorities did not have any continuing interest in Mr. Dalou after the routine questioning relating to his visit to the United States.
 
 
 10
 Finally, the BIA concluded that Mr. Dalou's restaurant appeared to have been closed pursuant to the Iraqi legal process since Mr. Dalou had received an eviction notice signed by a judge and Mr. Dalou presented no evidence demonstrating that his restaurant was closed because of persecution on account of race, religion, nationality, membership in a particular social group, or because of political opinion. 8 U.S.C. Secs. 1101(42)(A), 1253(h).
 
 
 11
 Thereafter, on December 6, 1989, petitioners filed a timely appeal of the Board's decision.
 
 II.
 
 12
 Petitioners' first contention on appeal is that they were not afforded a fair hearing on their application for asylum because the IJ applied an incorrect legal standard in evaluating their asylum application.
 
 
 13
 Aliens seeking to avoid deportation can attempt to show that they are eligible for a discretionary grant of asylum under section 208(a) of the Act, 8 U.S.C. Sec. 1158(a). Pursuant to section 1158(a), the Attorney General has discretion to grant asylum if he determines that an alien is a refugee within the meaning of 8 U.S.C. Sec. 1101(a)(42)(A) wherein a refugee is defined as a person unable or unwilling to return to his country because of persecution or a "well founded fear of persecution " on account of race, religion, nationality, membership in a particular social group, or political opinion. Id. (emphasis added).
 
 
 14
 To establish eligibility for withholding of deportation pursuant to section 243(b), of the Act, 8 U.S.C. Sec. 1253(b), however, an alien must show a clear probability of persecution in the country designated for deportation on account of race, religion, nationality, membership in a particular social group, or political opinion. INS v. Stevic, 467 U.S. 407 (1984). The alien must show that it is more likely than not he would be subject to persecution on one of the grounds specified. Id.
 
 
 15
 In his April 23, 1985 decision finding both petitioners to be deportable, the IJ relied on Matter of Sibrun, 18 I & N Dec. 354 (BIA 1983), and he evaluated both petitioners' asylum and withholding of deportation applications pursuant to the clear probability of persecution standard. The use of the clear probability standard for asylum cases, however, was rejected by the United States Supreme Court in INS v. Cardoza-Fonseca, 480 U.S. 421 (1987), a case wherein the Supreme Court held that "the 'well-founded' standard which governs asylum proceedings is different, and in fact more generous, than the 'clear probability' standard which governs withholding of deportation proceedings," id. 1210, and that "to show a 'well-founded fear of persecution,' an alien need not prove that it is more likely than not that he or she will be persecuted in his or her home country." Id. at 1222.[1]
 
 
 16
 While the IJ applied an incorrect legal standard, the BIA, which exercises de novo review over decisions issued by the immigration judges, see Matter of Vilanova-Gonzalez, 13 I & N Dec. 399, 402 (BIA 1969) ("This Board has plenary power to make a de novo review of the record"), corrected the IJ's use of an incorrect standard by reviewing petitioners' claim pursuant to the Cardoza-Fonseca standard which was evident in the Board's reliance on Matter of Mogharrabi, Int.Dec. 3028 (BIA 1987), a case following in the wake of Cardoza-Fonseca. The Board specifically stated, "we note that the well-founded fear standard requires a lesser degree of proof than the clear probability standard. We find that the [petitioners] have failed to establish a well-founded fear of persecution even under the more generous Mogharrabi standard."
 
 
 17
 Because the Board is authorized to review petitioners' claim de novo and the Board applied the proper standard in reviewing petitioners' case, any application of a wrong standard of proof by the IJ was rendered harmless. See Quintanilla-Ticas v. INS, 783 F.2d 955, 957 (9th Cir.1986). As it is the Board's decision and not the IJ's decision that is being reviewed by this Court, petitioners' allegations of improprieties regarding the IJ's decision do not merit reversal or remand of the Board's decision.
 
 
 18
 "Our scope of review on appeal is limited to determining whether the Board has abused its discretion in denying petitioner's requests for withholding of deportation or asylum." Gumbol v. INS, 815 F.2d 406, 408 (6th Cir.1987). In reviewing the Board's decision, so long as substantial evidence supports that decision, a reviewing court should not reverse the Board simply because of a disagreement as to the Board's evaluation of the facts. Diaz-Escobar v. INS, 782 F.2d 1488, 1493 (9th Cir.1986). Moreover, pursuant to section 106 of the Act, 8 U.S.C. Sec. 1105(a), which grants jurisdiction to this court to review the final orders of deportation, the petition shall be determined "solely upon the administrative record upon which the deportation order is based and the Attorney General's findings of fact," and, "if supported by reasonable, substantial and probative evidence on the record considered as a whole, shall be conclusive." Id. We find that even under the more generous standard for asylum, substantial evidence in the record supports the Board's conclusion that petitioners failed to demonstrate that their fear of persecution was "well-founded."
 
 
 19
 As found by the Board, no evidence was presented that the Iraqi government "persecuted" Christians in general or petitioners in particular, especially in light of the fact that petitioners' passports were renewed and they were permitted to travel extensively after their 1980 visit to the United States. While petitioners were affiliated with a Christian club closed by the Iraqi government, the government still permitted scheduled church services. Moreover, petitioners offered no evidence that after the club was closed the Iraqi government had any further interest in the individual club members and petitioners utterly failed to specify what problems the other club members faced. Thus, we do not take exception to the Board's conclusion that petitioners failed to establish that a reasonable person who belonged to a Christian club closed by the Iraqi government would fear persecution in the absence of any evidence that after the club was closed any further actions were taken against club members.
 
 
 20
 Secondly, we further find that Mr. Dalou's testimony bolsters the Board's conclusion denying asylum since Mr. Dalou testified that everyone coming from the United States in 1980 was questioned by Iraqi authorities. Consequently, such questioning relating to his 1980 visit to the United States was not unreasonable nor demonstrated persecution by the Iraqi government.
 
 
 21
 Thirdly, we find no error in the Board's conclusion that the closing of Mr. Dalou's restaurant was done in accordance with the Iraqi legal process as he did receive an eviction notice signed by a judge and no evidence was presented demonstrating that his restaurant was closed because of persecution on account of race, religion, nationality, membership in a particular social group, or because of political opinion. 8 U.S.C. Sec. 1253(b).
 
 
 22
 Consequently, upon reviewing the evidence of record in its totality, we agree with the BIA that petitioners failed to sustain their burden of proof in demonstrating a well-founded fear of persecution for any of the reasons enumerated in section 1101(a)(42)(A) since petitioners were not able to present "some specified facts, either through objective evidence or through persuasive credible testimony, to show that their fear of persecution is "well-founded." Gumbol at 412 quoting Youkhanna v. INS, 749 F.2d 360, 362 (6th Cir.1984).
 
 III.
 
 23
 Petitioners further contend that the evidentiary standards now required and utilized by the Board for reviewing applications for asylum are in conflict with those prevailing at the time of petitioners' deportation hearing and that their claims for relief were evaluated by standards of which they were not aware and had no opportunity with which to comply. Specifically, petitioners assert that at the time of their deportation hearing, Matter of McMullen, 17 I & N Dec. 542 (BIA 1980), and Matter of Martinez-Romero, 18 I & N Dec. 75 (BIA 1981), held that background evidence was not probative and would be given little evidentiary value. Thus, petitioners allege that at their hearing there was no reason for them to introduce generalized background evidence relating to the Iraqi government's persecution of Christians. Petitioners contend, however, that after Cardoza-Fonseca when the BIA reviewed their applications, generalized background evidence was considered potentially probative as noted in Matter of Dass, Int. Dec. 3122 (BIA 1989).
 
 
 24
 We find petitioner's contention to be unmeritorious. Regardless of the introduction of generalized background evidence, the BIA's decision rejecting petitioner's application was and would have been supported by substantial evidence. Petitioner's contention that the BIA's decision denying petitioner's claims for asylum was based upon the lack of general background evidence, indeed that the lack of general background evidence was the cornerstone of the BIA's denial of petitioners' applications, mischaracterizes the BIA's opinion. While noting the lack of generalized evidence in the record relating to the Iraqi government's persecution of Christians, that was but a small part of the BIA's decision. Viewing the BIA's decision in its entirety, regardless of the inclusion or exclusion of generalized background evidence, substantial evidence existed in the record supporting the BIA's holding that petitioner had failed to establish a well-founded fear of persecution. BIA had evidence in the record to indicate that petitioners were free to travel, as corroborated by petitioners' own testimony, that they were not unduly harassed for visits to the United States, and that they were not persecuted because of their religion as evidenced by the lack of specific information detailing such persecution. Notwithstanding these findings, this court takes judicial notice of the recent events unfolding in Iraq and the adjacent Arabian peninsula region. Published reports concerning the abuses of the Iraqi government toward its people lend some support to the petitioners' claims, and may be relevant to the BIA's evaluation of this case. Thus, although we find the BIA's decision to be supported by substantial evidence, we nevertheless REMAND this case to the INS to allow it the opportunity to consider this matter further in the light of recent developments.
 
 
 25
 Remanded.
 
 
 
 [1]
 In Cardoza-Fonseca, 480 U.S. 421 (1987), the Court, while declining to set forth a detailed definition of the well-founded fear standard, expressly held that the contours of the standard should be shaped by the process of case-by-case adjudication. Id. at 448; Gumbol v. INS, 815 F.2d 406, 410 n. 3 (6th Cir.1987)