Anton IVEZAJ and Ljena Doljevic, Petitioners–Appellants,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent–Appellee.

No. 94–3898.

United States Court of Appeals, Sixth Circuit.

Submitted Oct. 3, 1995.

Decided May 28, 1996.

George P. Mann (briefed), Farmington Hills, MI, for Petitioners.

Norah Ascoli Schwarz, Pauline C. Terrelonge (briefed), U.S. Department of Justice, Immigration Litigation, Civil Division, Washington, DC, Edmund A. Sargus, Jr., U.S.

Attorney, Office of the U.S. Attorney, Columbus, OH, for Respondent.

Before: JONES and BOGGS, Circuit Judges; and COFFMAN, District Judge.[*]

BOGGS, Circuit Judge.

Anton Ivezaj and Ljena Doljevic, husband and wife, appeal from a determination by the Board of Immigration Appeals (BIA) that the couple is not entitled to asylum or withholding of deportation. The BIA had affirmed the decision of an Immigration Judge (IJ) who granted Ivezaj and Doljevic the privilege of voluntary departure after denying their application for asylum and withholding of deportation. For the reasons given below, we affirm the BIA's decision.

## I.

Anton Ivezaj, age 29, and Ljena Doljevic, age 23, were citizens of the former Yugoslavia when they departed from Yugoslavia on January 18, 1987, bound for Mexico City. The couple crossed into California near Tijuana, and then flew directly to Detroit, where they were eventually discovered by agents of the Immigration and Naturalization Service (INS).

Ivezaj and Doljevic are Roman Catholics of Albanian descent. They lived in the Yugoslav republic of Montenegro, which is still part of the remaining Yugoslav federation. Montenegro is in southern Yugoslavia, north of Albania, northwest of the former Yugoslavian republic of Macedonia and west of the Kosovo region in Serbia. Serbia is the core of what remains of the Yugoslav federation. Ethnic and religious conflicts underlying the war raging in Bosnia–Herzegovina had threatened to spill into the two former Yugoslav republics that have large numbers of ethnic Albanians: Montenegro and Macedonia.[1] Kosovo is a region where the Serbs lost a major battle to invading Turks 600 years ago, and is viewed by Serbs as the birthplace of Serb national identity. *Land of the South Slavs,* Nat'l Geographic, Aug. 1990,

at 106. However, Kosovo's population is now 90% Albanian and only 10% Serb. Christine Spolar, *Kosovo's Albanians Assert Nationalism; Serbian Leaders Vow to Retain Control,* Wash. Post, Dec. 29, 1992, at A10. Muslim Albanians in Kosovo have been subjected to horrible persecution by the Serbs—they have been killed, beaten, raped, tortured, and politically oppressed. Dep't of State, 103d Cong., 2d Sess., Country Reports on Human Rights Practices for 1993 1038–45 (J.Comm. Print 1994). Repression of Albanians in Montenegro does not appear to be as great, although it exists. *Id.* at 1038–39. The Serbian persecution of Montenegrins also focuses on Muslims. *Id.* at 1040–41. There is no evidence of persecution of Catholics in Montenegro, although the Serbs, who are Orthodox, have persecuted Hungarian and Croatian Catholics in Vojvodina, another region in the former Yugoslavia. *Id.* at 1046.

Before coming to the United States, Ivezaj and Doljevic lived in the mountains of Montenegro on a farm. Some of their reason for coming to the United States were economic—Ivezaj's father is a legal resident of the United States, who had told them of the economic opportunities available here. There is no evidence that Ivezaj or Doljevic were ever persecuted in Montenegro. They do not belong to any political groups. Ivezaj's brother, however, had once been jailed overnight by the Serbian Secret Police for discussing the political situation in Kosovo. It is unclear from the record, but it seems as if one of Ivezaj's cousins had a friend in the Secret Police who prevailed upon that organization to release Ivezaj's brother.

Ivezaj and Doljevic were the equivalent of common law husband and wife in Montenegro. They simply began living together in Montenegro and consummated their marriage. They failed to register it, however, because they refused to take a communist loyalty oath that was required at the time. They also feared getting married in a church. They allege no facts sufficient to support any claim that their fear of a communist loyalty oath has any current significance.

[*] The Honorable Jennifer B. Coffman, United States District Judge for the Eastern and Western Districts of Kentucky, sitting by designation.

1. Inclusion of this and subsequent evidence bearing on conditions in the former Yugoslavia is in dispute. See the discussion at III, below.

On May 21, 1990, the INS issued a show cause order as to why Ivezaj and Doljevic, who were now living in Detroit, should not be deported. Ivezaj and Doljevic conceded deportability, but requested asylum. Requests for asylum are also deemed requests for withholding of deportation under 8 U.S.C § 1253(h) and 8 C.F.R. § 208.3(b). An IJ at the INS conducted telephonic hearings on July 10, 1990 and September 18, 1990 to determine whether Ivezaj's and Doljevic's requests for asylum or withholding of deportation should be granted. The IJ issued an oral decision on October 25, 1990, denying the request both for asylum and for withholding of deportation.

Ivezaj and Doljevic appealed the adverse determination of the IJ to the BIA, but the BIA affirmed its IJ's decision by order on July 25, 1994. The long delay was apparently the result of Ivezaj's and Doljevic's lack of diligence in pressing their appeal.

## II.

Ivezaj and Doljevic claim that the IJ treated them unfairly in the hearing. They allege the IJ was abrupt because he immediately asked the government attorney to state the gravamen of Ivezaj's and Doljevic's arguments for asylum and withholding of deportation, in order to cut to the heart of the matter. They argue the IJ intimidated them by asking yes-or-no questions and cutting them off, making the entire hearing last only 30 minutes. They point to the IJ's statement that he would include newspaper clippings about persecution in Yugoslavia that Ivezaj and Doljevic wanted to enter into the record "for whatever it's worth." They argue these facts lead to the inference that the IJ had already prejudged their case before the hearing had concluded.

Ivezaj's and Doljevic's appeal of the BIA's determination raises five issues: (1) whether this court can take judicial notice of changed conditions in the former Yugoslavia; (2) whether Ivezaj and Doljevic failed to exhaust their administrative remedies, thus barring this appeal; (3) whether Ivezaj's and Doljevic's due process rights were violated by the

manner in which the IJ conducted their deportation hearings; (4) whether there is substantial evidence to support the BIA's determination that Ivezaj and Doljevic were not entitled to withholding of deportation; and (5) whether there is substantial evidence to support the BIA's determination that Ivezaj and Doljevic were not entitled to asylum because of a well-founded fear of persecution. We have exclusive jurisdiction under 8 U.S.C. § 1105a(a). We hold that we may take judicial notice of changed conditions in Yugoslavia, that Ivezaj and Doljevic did exhaust their administrative remedies, that substantial evidence supports the BIA determination, and that Ivezaj's and Doljevic's due process rights were not violated. We therefore affirm the BIA's decision.

## III. JUDICIAL NOTICE

■ Ivezaj and Doljevic ask this court to take judicial notice of the material in their brief's appendices, even though the material therein is not part of the record on appeal. The government resists the consideration of such material, citing 8 U.S.C. § 1105a(a)(4), which states that "the petition shall be determined solely upon the administrative record upon which deportation is based...." This statutory provision cannot be interpreted to bar this court from taking judicial notice of changed conditions in a foreign country, however. *Cf.* Fed.R.Evid. 201 (allowing a court to take judicial notice of facts "not subject to reasonable dispute"; subsection (f) allows judicial notice to occur at any stage of a proceeding); Fed.R.Evid. 1101(a) (stating that the Federal Rules of Evidence govern the courts of appeals). For proper applications of § 1105a(a)(4), see *Hazime v. INS,* 17 F.3d 136, 138 n. 1 (6th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 331, 130 L.Ed.2d 289 (1994) (§ 1105a(a)(4) precluded alien from claiming on appeal that he did not have a brother in Lebanon when he testified to the contrary before the BIA); *Yaldo v. INS,* 424 F.2d 501, 503 (6th Cir.1970) (argument that alien's ex-wife was biased against him was not properly directed to the court under § 1105a(a)(4), because this was initially a question for the INS's Special Inquiry Officer (SIO) [2]).

2. 8 C.F.R. § 1.1(*l*) establishes that the terms IJ and SIO are interchangeable.

The Sixth Circuit consistently takes judicial notice of changed political circumstances in immigration cases. *Palushaj v. INS*, 25 F.3d 1049, 1994 WL 198169, at *2 (6th Cir. 1994) (unpublished) (taking judicial notice of the persecution of ethnic Albanians in Kosovo); *Ivezaj v. INS*, 940 F.2d 660, 1991 WL 151157, at *2 (6th Cir.1991) (unpublished) (same) [Anton Ivezaj does not appear to be a relation to this case's Marko Ivezaj]; *Dalou v. INS*, 914 F.2d 1494, 1990 WL 140540 (6th Cir.1990) (unpublished per curiam) (taking judicial notice of "recent events unfolding in Iraq and the adjacent Arabian peninsula region"); *Dawood–Haio v. INS*, 800 F.2d 90, 91 (6th Cir.1986) (taking judicial notice of the Iran–Iraq war). *But see Dokic v. INS*, 999 F.2d 539, 1993 WL 265166, at *5 n. 3 (6th Cir.1993) (unpublished per curiam) (refusing to take judicial notice of Amnesty International Reports and newspaper articles "regarding the tense political situation in Yugoslavia which were not part of the administrative record," on the basis of § 1105a(a)(4), although indicating that consideration of these materials would not have influenced the panel's decision). The government's argument that the persecution of Albanians by Serbs should be ignored by this court is thus rejected.

## IV. EXHAUSTION

■ The INS argues that this court has no jurisdiction over this appeal because Ivezaj and Doljevic have failed to exhaust their administrative remedies, citing *Dokic v. INS*, 899 F.2d 530, 532 (6th Cir.1990) (per curiam) (holding that the failure to file a motion to reopen a case before the BIA constituted a failure to exhaust administrative remedies). It is undisputed that Ivezaj and Doljevic have not filed such a motion to reopen. Under 8 C.F.R. § 3.2[3] the BIA is given the power to reopen deportation proceedings in certain circumstances. This regulation has features that make it inappropriate as the basis for imposing an administrative exhaustion requirement, however. Section 3.2 gives the

BIA the power to reopen any case *sua sponte*, in addition to considering motions to reopen by the aliens in question. Furthermore, it seems to permit an alien to file repeated motions for reconsideration. Because of these two features, it would be strange to construe § 3.2 as creating a barrier to judicial review if not invoked. It will always be true that a case could be reopened by the BIA, either on its own initiative, or in response to a motion made by the alien. We hold § 3.2 does not create an exhaustion requirement. Once the BIA has rendered a decision, an appeal to this Court is proper.

Another panel of the Sixth Circuit has distinguished *Dokic*. In *Perkovic v. INS*, 33 F.3d 615, 620 n. 4 (6th Cir.1994), we held that jurisdiction over the Perkovics' appeal was proper, despite the fact that the Perkovics had failed to appeal from an IJ determination that they were deportable, after a remand from the BIA directing the IJ to deport them. Even though the *Dokic* court did not remand the case to the BIA, but simply stayed the appeal to give Dokic an opportunity to file a motion to reopen with the BIA, *Perkovic* distinguished *Dokic* on the grounds that exhaustion was not found in *Dokic* because Dokic was making a due process argument not previously raised with the BIA, and so, by holding Dokic's appeal was barred by the exhaustion doctrine, the *Dokic* court was really insisting that appellate issues must be raised below. *Cf. Foster v. Barilow*, 6 F.3d 405, 408 (6th Cir.1993) ("This court is not compelled to hear, nor should it hear, an issue not presented to the district court unless reaching that issue serves an overarching purpose beyond that of arriving at the correct result in an individual case."). Ivezaj and Doljevic are not raising any new legal issues that were not brought before the BIA. Thus, there is no need for the BIA to supplement the administrative record before we can hear this appeal. Ivezaj and Doljevic present new evidence about the deteriorating condition of affairs in Montenegro, but it is

---

**3.** 8 C.F.R. § 3.2 provides, in relevant part:
The Board may on its own motion reopen or reconsider any case in which it has rendered a decision. Reopening or reconsideration of any case in which a decision has been made by the Board, whether requested by the Commissioner or any other duly authorized officer of the Service, or by the party affected by the decision, shall be only upon written motion to the Board....

apparent from the BIA's order that the presentation of any facts of this nature will be insufficient, in its view, to warrant reopening proceedings, because it thinks that Ivezaj and Doljevic have failed to show any likelihood that they will be singled out for persecution. Thus, under *Perkovic*'s reading of *Dokic*, applying the exhaustion doctrine here is inappropriate.

In addition, neither *Dokic* nor *Perkovic* adverted to 8 C.F.R. § 3.1(d)(2), which establishes that "[t]he decision of the Board shall be final except in those cases reviewed by the Attorney General...." *See Burman v. INS*, 32 F.3d 569, 1994 WL 378354, at *2 (6th Cir.1994) (unpublished per curiam) (noting that § 3.1(d)(2) makes the decisions of the BIA final and reviewable by the courts of appeals). The Attorney General did not review the BIA's determination here. Section 3.2 gives the BIA the capability to reopen or reconsider a case, but that capability does not alter the finality of its decisions under § 3.1(d)(2). Ivezaj's and Doljevic's appeal is thus not barred by a failure to petition the INS to reopen their case under § 3.2.

## V. DUE PROCESS

■ The Sixth Circuit has not adopted a standard of review for an alleged due process violation based on an IJ's manner of conducting a deportation hearing. We agree with the Ninth Circuit that the standard of review should be *de novo*. *Hartooni v. INS*, 21 F.3d 336, 339 (9th Cir.1994). The BIA ruled that the IJ's manner of conducting Ivezaj's and Doljevic's deportation hearings satisfied the requirements of due process.

■ A review of the transcript of the hearings conducted by the IJ shows no basis for the claim that the IJ violated Ivezaj's and Doljevic's due process rights. By forcing Ivezaj's and Doljevic's counsel to get to the point, the IJ did no more than exercise his quasi-judicial powers to control the pace of the hearings, and to focus the hearings on relevant matters. That an IJ possesses such limited inherent powers to control the conduct of a hearing is implicit in 8 C.F.R. § 242.17(c)(4)(ii) (establishing procedural requirements for evidentiary hearings concerning applications for asylum and withholding

of deportation): "[n]othing in this section is intended to limit the authority of the Immigration Judge properly to control the scope of any evidentiary hearing."

Moreover, due process requires that Ivezaj and Doljevic be given an opportunity to be heard, but that opportunity need not be "upon a regular, set occasion, and according to the forms of judicial procedure, but one that will secure the prompt, vigorous action contemplated by Congress, and at the same time be appropriate to the nature of the case upon which such officers are required to act." *Hammoud v. INS*, 47 F.3d 1168, 1995 WL 63167, at *1 (6th Cir.1995) (quoting *Japanese Immigrant Case*, 189 U.S. 86, 101, 23 S.Ct. 611, 614, 47 L.Ed. 721 (1903)).

There is no evidence in the record that the IJ was overly abrupt or intimidated Ivezaj and Doljevic; but even assuming such evidence existed, Ivezaj and Doljevic have no right not to have their feelings hurt by a "no nonsense" IJ. The IJ's statement that he would include newspaper clippings about persecution in Yugoslavia that Ivezaj and Doljevic wanted to enter into the record "for whatever it's worth" is not evidence of the IJ prejudging this case. At the point in the hearing that this remark was made, the IJ had heard enough evidence to suggest that Ivezaj and Doljevic had probably not proved their case; the contents of the articles about conditions in Yugoslavia would not show that the couple would be singled out for persecution if they returned to Montenegro. *See DeLucia v. INS*, 370 F.2d 305, 308–09 (7th Cir.), *cert. denied*, 386 U.S. 912, 87 S.Ct. 861, 17 L.Ed.2d 784 (1967) (INS SIO had not prejudged case because other government officials called the alien a "racketeer" and a "kingpin of vice," and because the SIO might have read such negative publicity about the alien).

## VI. WITHHOLDING OF DEPORTATION

■ The standard of review in appeals from BIA orders is whether substantial evidence supports the determination made by the BIA. 8 U.S.C. § 1105a(a)(4); *Yaldo*, 424 F.2d at 503. "All the substantial evidence

standard requires is that the BIA's conclusion, based on the evidence presented, be substantially reasonable." *Klawitter v. INS,* 970 F.2d 149, 151 (6th Cir.1992) (quoting *Diaz–Escobar v. INS,* 782 F.2d 1488, 1493 (9th Cir.1986)).

■■ To show an entitlement to withholding of deportation under 8 U.S.C. § 1253(h), Ivezaj and Doljevic must demonstrate that there is a clear probability they would be subject to persecution if they were to return to Montenegro. *INS v. Stevic,* 467 U.S. 407, 429, 104 S.Ct. 2489, 2501, 81 L.Ed.2d 321 (1984). Here, the BIA reached a substantially reasonable conclusion that Ivezaj and Doljevic did not show that it is more likely than not that they would be subjected to persecution upon returning to their native country. Ivezaj and Doljevic are Albanians from Montenegro. Albanians in Montenegro are less persecuted than those Albanians residing in Kosovo. Furthermore, Ivezaj and Doljevic are Catholic, not Muslim. All of the evidence Ivezaj and Doljevic have presented demonstrates Serb oppression of Muslims, not Catholics. Ivezaj and Doljevic belong to no political groups, and have never been jailed for political or religious activity. Ivezaj's brother has, but for only one night. The couple's simple allegations hardly make it more likely than not that Ivezaj or his wife will be subjected to persecution.

## VII. ASYLUM AND THE WELL–FOUNDED FEAR TEST

■■ The standard of review of Ivezaj's and Doljevic's claims that they are entitled to asylum is also the substantial evidence test. *Klawitter,* 970 F.2d at 151. The well-founded fear of persecution test for determining refugee status [4] when an alien requests asylum is more generous than the clear probability of persecution standard for withholding of deportation. *INS v. Cardoza–Fonseca,* 480 U.S. 421, 430–31, 107 S.Ct. 1207, 1212–13, 94 L.Ed.2d 434 (1987). *Cardoza–Fonseca*'s well-founded fear of persecution test is a

hybrid of an objective test and a subjective test. The test is not solely objective, as in *Stevic*'s clear probability test, but neither is it wholly subjective. The potential deportee's subjective fears must be "well-founded," i.e., grounded in fact.

■■ Two Sixth Circuit opinions dispose of Ivezaj's and Doljevic's claim to have a well-founded fear of persecution, should they return to Montenegro. *Yousif v. INS,* 794 F.2d 236, 244 (6th Cir.1986), holds that evidence that Chaldean Christians were persecuted in Iraq was insufficient to show a well-founded fear where the Chaldean applicant for asylum could produce no evidence that he might be singled out for persecution upon returning to Iraq. Like Ivezaj, the applicant's brother had also been jailed briefly (for refusing to read the Koran). *Cf. Dolores v. INS,* 772 F.2d 223, 225 (6th Cir.1985) (quoting *Dally v. INS,* 744 F.2d 1191, 1195 (6th Cir.1984)) ("[n]either 'documentary evidence, not pertaining to the applicant individually, that depicts a general lack of freedom or the probability of human rights abuses in the alien's native land[,]' nor the alien's own conjecture or subjective allegations will satisfy [the clear probability] standard").

■■ The well-founded fear standard requires asylum-seekers to prove specific facts linking the applicant to political, ethnic, racial, or national oppression. Therefore, even if we were to assume some level of Serb persecution of Catholics in Montenegro, which Ivezaj and Doljevic have presented no evidence to show, then Ivezaj and Doljevic must show more than simple membership in such a group. Ivezaj and Doljevic have not met their burden of proof by showing, first, that any Montenegrin Catholics are being persecuted, and second, that they are Montenegrin Catholics more likely than other Montenegrin Catholics to be persecuted. *See* 8 C.F.R. § 208.13 (placing burden of proof on applicants for asylum).

---

**4.** An "alien may be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A) of this title." 8 U.S.C. § 1158(a). "The term 'refugee' means (A) any person who is outside any country

of such person's nationality ... and who is unable or unwilling to return to ... that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion...." 8 U.S.C. § 1101(a)(42).

Ivezaj and Doljevic argue that their appeal is indistinguishable from *Palushaj*. The Sixth Circuit remanded that case to the BIA in light of evidence about changing conditions in Yugoslavia. But *Palushaj* does not apply to this case for two reasons. First, Palushaj lived in Kosovo, which is undisputedly a region where more widespread persecution of Muslim Albanians is taking place.[5] Second, and more importantly, Palushaj participated in certain political activities in Yugoslavia that aroused the attentions of the Secret Police sufficiently for him to be questioned on a number of occasions, and for his brother in Yugoslavia to write to him that the police were looking specifically for him in Yugoslavia.

### VIII.

The BIA's final order to deny Ivezaj and Doljevic withholding of deportation and asylum is supported by substantial evidence, and the BIA did not err in rejecting the couple's claim that their deportation hearings before an IJ violated their due process rights. The BIA's decision is therefore **AFFIRMED.**

---

5. The *Palushaj* opinion did not note Palushaj's religion, but a review of the record of that case on appeal shows that Palushaj was also Catholic. While this similarity slightly supports Ivezaj's and Doljevic's argument for a remand, the significant differences between this case and *Palushaj* tip the balance against that argument.