*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0086p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

---

SYED SHAHID AHMED (03-3374), BILQIS SHAHID
(03-3375), SYED FERAZ AHMED (03-3376), and SYED
SHERAZ AHMED (03-3377),

       *Petitioners-Appellants,*

   *v.*

ALBERTO GONZALES, Attorney General of the United
States,

       *Respondent-Appellee.*

Nos. 03-3374/3375/3376/3377

---

On Petition for Review of a Decision of the Board of Immigration Appeals.
Nos. A77 432 187; A77 432 188; A77 432 189; A77 432 190.

Argued: October 14, 2004

Decided and Filed: January 25, 2005[*]

Before: NELSON and COLE, Circuit Judges; SARGUS, District Judge.[**]

---

## COUNSEL

**ARGUED:** Marquette D. Evans, BROWN, LIPPERT, HEILE & EVANS, Cincinnati, Ohio, for Petitioner. Russell J.E. Verby, U.S. DEPARTMENT OF JUSTICE, OFFICE OF IMMIGRATION LITIGATION, Washington, D.C., for Respondent. **ON BRIEF:** Marquette D. Evans, BROWN, LIPPERT, HEILE & EVANS, Cincinnati, Ohio, for Petitioner. Russell J.E. Verby, Ernesto H. Molina, U.S. DEPARTMENT OF JUSTICE, OFFICE OF IMMIGRATION LITIGATION, Washington, D.C., for Respondent.

---

## OPINION

---

  R. GUY COLE, JR., Circuit Judge. This appeal presents the case of a Pakistani family ("the Ahmeds") whose application for asylum was denied by an immigration judge. Because we find that the judge's persistent mischaracterization of the Ahmeds' testimony biased his decision against them as to both their credibility and their claims of past and likely future persecution, we **GRANT** the petition for review,

---

[*] This decision was originally issued as an "unpublished decision" filed on January 25, 2005. The Court has now designated the opinion as one recommended for full-text publication.

[**] The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

**VACATE** the decision of the Board of Immigration Appeals affirming the immigration judge's decision, and **REMAND** for a new hearing before a different immigration judge.

## I.

All of the members of the Ahmed family are citizens of Pakistan and members of the Urdu ethnic minority ("Mohajirs") that migrated to Pakistan following the 1947 partition of India and Pakistan. They argue that they were persecuted in Pakistan on the basis of their ethnicity and their political affiliation with the MQM-Altaf, a political party that represents Mohajirs.

The Ahmed family claims that members of the Sindh ethnic majority repeatedly came to their home and business with false documents, claimed ownership of the property, and illegally occupied it. The police provided little help on these occasions, although on occasion the police removed the trespassers and put them in jail for a single night before freeing them. More often, the Ahmed family had to remove the trespassers with the aid of neighbors. The police would frequently solicit bribes from the Ahmed family as a condition to providing assistance. After a series of alleged threats against the Ahmeds' lives, including threatening telephone calls and an allegedly politically-motivated attack on their cousin, the Ahmeds allege that some Sindhi occupied their property and bulldozed the Ahmeds' home and place of work. They claim the police took no action while the Ahmeds were persecuted on the basis of their ethnicity and political affiliations.

The Ahmeds came to the United States in November of 1998 in order to get medical treatment for Syed Feraz Ahmed, one of Mr. Ahmed's sons, who had a serious eye condition. On February 9, 1999 they filed an application for asylum and withholding of removal. An immigration judge heard their case on December 6, 2001. At the hearing, the judge appears to have frequently misunderstood the Ahmeds' testimony, becoming especially confused during the testimony of Mrs. Ahmed, who goes by the name Bilqis Shahid.

The judge denied the Ahmed's application, finding that Shahid's lack of credibility had destroyed "the credibility, basically of everything else that these people have presented." The BIA affirmed the judge's decision without opinion on Feb. 10, 2003. *See In re Ahmed, Syed Shahid*, File A77-432-187 (BIA Order of Feb. 10, 2003).

The Ahmeds now appeal the decision to deny their asylum application, on the grounds that they were denied due process in their hearing before the Immigration Judge.[1]

## II.

While we generally review BIA decisions under the "compelling evidence" standard from *Klawitter v. INS*, 970 F.2d 149, 152 (6th Cir. 1992), we review decisions by immigration judges on matters of removal for Fifth Amendment due process violations *de novo*. *Castellano-Chacon v. INS*, 341 F.3d 533, 552-53 (6th Cir. 2003). It is undisputed that petitioners in such proceedings are entitled to an unbiased arbiter who has not prejudged their claims. *See, e.g.*, *Kaoru Yamataya v. Fisher* (a.k.a. *Japanese Immigrant Case*), 189 U.S. 86, 101 (1903) (stating that no person, even an alien, "shall be deprived of his liberty without opportunity, at some time, to be heard . . . in respect of the matters upon which that liberty depends"); *Reno v. Flores*, 507 U.S. 292, 306 (1993) (holding that Fifth Amendment protections apply to aliens in deportation proceedings); *Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001) (noting that the Fifth Amendment guarantees immigration defendants a "full and fair hearing"); *Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998). However, we note that immigration judges do have broad discretion in conducting their hearings, *Mikhailevitch*, 146 F.3d at 391, and that mere intimidation or interruption by a judge does not

---

[1]The Ahmeds also applied for voluntary departure in the event that the Immigration Judge denied their application; this request was also denied but the Ahmeds do not appeal that decision here.

render a hearing unfair. *Ivezaj v. INS*, 84 F.3d 215, 220 (6th Cir. 1996) ("[Even if there were evidence that the immigration judge was overly abrupt or intimidating, petitioner has no right not to have [his] feelings hurt by a no nonsense immigration judge."), *superseded by statute on other grounds as stated in Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004). Despite this, it should also be noted that "the administrative findings of fact [of an immigration judge] are conclusive unless any reasonable adjudicator would be compelled to find to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). Therefore, ensuring due process at a hearing before an immigration judge may be particularly important in immigration cases given such a high presumption of correctness on appeal.

Like other hearings regarding deprivations of liberty interests, immigration hearings "need not be upon a regular, set occasion, and according to the forms of judicial procedure, but one that will secure prompt, vigorous action contemplated by Congress, and at the same time be appropriate to the nature of the case . . . ." *Mikhailevitch*, 146 F.3d at 391 (citations omitted). However, due process for an alien in an INS proceeding consists of at least "a reasonable opportunity to examine the evidence against him, to present evidence on his own behalf, and to cross-examine witnesses presented by the Government," *id.* (statutory citation and quotation omitted), and this Court has held that the Fifth Amendment requires a "full and fair hearing" of such evidence. *See Huicochea-Gomez*, 237 F.3d at 699. As a result, a hearing where an immigration judge cannot be said to have fairly considered the evidence presented by the petitioners is one where those petitioners have been deprived of due process. *See, e.g.*, *Amadou v. INS*, 226 F.3d 724, 727 (6th Cir. 2000) (holding that where a translator prevented an Immigration Judge from understanding the evidence presented, due process had been violated); *Gonzalez v. Zurbrick*, 45 F.2d 934, 936-37 (6th Cir. 1930) (same). *Cf. Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 573 n.12 (1972) (noting that the purpose of the required hearing in another liberty interest context is "to provide the person an opportunity to clear his name.").

In cases where petitioners in immigration cases did not receive a fair hearing, this Court has previously ordered new hearings before new immigration judges. *See, e.g.*, *Amadou*, 226 F.3d at 727; *Gonzalez*, 45 F.2d at 936-37; *see also Perez-Lastor v. INS*, 208 F.3d 773, 777 (9th Cir. 2000). In addition, we have questioned immigration judges' decisions when they are based on both misunderstandings of translators and of testimony clearly presented by petitioners. *See, e.g.*, *Daneshvar v. Ashcroft*, 355 F.3d 615, 622-23 (6th Cir. 2004).

In the instant case, the immigration judge found the Ahmeds not credible on the basis of numerous misunderstandings of their testimony. For example, one two-page-long exchange between the judge and Shahid started with the judge misstating Shahid's testimony by telling her that her answer to a question he had asked regarding an attack on her mother-in-law was "1998," when it had actually been "1978," and then confusedly questioning her about this until she finally was able to inform him that she had been correct initially. Despite the fact that Shahid had always testified consistently that her mother-in-law was attacked in 1978 and died in 1982, the immigration judge later held this against her in his credibility findings, claiming that "[l]ater there was a vast confusion about when the mother-in-law might have died." This is just one example of the numerous misunderstandings that developed between the judge and the Ahmeds.

The judge's misunderstandings were not limited solely to Shahid's testimony. When the judge inquired whether the Ahmeds had complained about harassment by a political party, he asked "Did you go, or did your wife go?" Mr. Ahmed replied "I am going." The judge then asked "Your wife didn't go?" and Mr. Ahmed responded "No. She is going with me. Yes, she is going with me." Yet the court later stated that Mr. Ahmed at first had claimed his wife had not gone and that he had later changed his answer, proceeding to find that Mr. Ahmed's testimony was thus "replete with lies" and finding him to lack credibility, despite the fact that any confusion over who had gone to complain was due to a mere misunderstanding between the judge and Mr. Ahmed. Again, this is just one example of how the "inconsistencies" and "contradictions" on which the judge based his determinations that "none of the respondents are credible witnesses" were due to his own misunderstandings. And "instead of attempting

to reconcile the discrepancies, the [immigration judge] simply, and unjustifiably, assumed that there was an inconsistency. . . ." *Id*. at 623 n.8.

While there is no evidence that the judge *intentionally* confused the witnesses, as the Ahmeds claim, it is clear that the judge himself created much of the confusion, as well as many of the contradictions and inconsistencies in the record, and then held all of this against the Ahmeds. The record reflects that Mr. Ahmed and his two sons testified consistently with each other and attempted to explain to the judge that Shahid had been confused. Rather than recognizing that he had been the cause for much of Shahid's confusion, the judge cited the confusion as his main ground for his finding that Shahid, as well as the rest of the Ahmeds, lacked credibility.

Beyond these exchanges where the immigration judge himself was confused by testimony, sometimes holding his own mishearing against the Ahmeds, it is not clear that there is a sufficient basis for the judge's finding of poor credibility. For example, the judge noted that when the older son was asked how often elections are held he responded "I think every 4 years." From this the judge concluded "[a]ccordingly, this person just like his parents tended to make up things when they don't know." *Cf. id*. at 623 ("If discrepancies cannot be viewed as attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility." (citation omitted)); *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004) (holding that "minor and irrelevant inconsistencies cannot constitute the basis for an adverse credibility determination," and that such "variations, misstatements, or inconsistencies should have played no part in the decision of the Immigration Judge or BIA.").

In the end, the immigration judge found that Shahid was "completely flummoxed," and that, due to her confusion, she had destroyed "the credibility, basically of everything else that these people have presented." In denying the Ahmeds' asylum application he additionally found that "the two primary respondents in this case, the husband and the wife, are just flat out not credible," while referring to only one statement (by Shahid) that was not a misunderstanding or inconsistency of the Immigration Judge's own creation.

As a result, the Ahmeds did not receive a meaningful hearing of their case. This case falls under the same principle that previously caused this Court to find that problems with an interpreter denied the petitioner a fair hearing. *Amadou*, 226 F.3d at 727. In *Amadou*, the Board was on notice that there was a problem with the interpreter due to several statements the interpreter made indicating that he was having trouble understanding Amadou. We found that this misunderstanding prejudiced Amadou because the judge denied Amadou's application based on the testimony at the hearing. We concluded, under these circumstances, that an alien is denied a full and fair hearing when he is ordered deported based upon unreliable translation, because the immigration judge could not understand the testimony Amadou was presenting to the court. *Id*. at 728.

Here, although the misunderstanding of testimony was by the judge rather than the interpreter, the underlying concerns are the same. The judge recognized and stated early on that he was having difficulty understanding Shahid's testimony. Despite this fact, he largely based his denial of asylum on credibility findings based upon confused exchanges which were instigated by his own failure to understand correctly the Ahmeds' answers to his questions.[2] Indeed, in his oral decision the judge only noted one instance where he may have misheard Shahid (confusing "months" with "weeks"), while basing his adverse credibility

---

[2]In an alternate holding, the immigration judge stated that even if he had believed the Ahmeds' story, they still were not eligible for asylum. However, this alternate ruling is undermined by the judge's confusion regarding the Ahmeds' testimony; we cannot say that the judge could fairly be said to have understood exactly what the Ahmeds' story actually was. (Indeed, he noted that "[b]ecause of the shifting nature of the stories in this case, it is almost impossible to distinctly summarize exactly what the claims of the [Ahmeds] are.") As a result, the alternate holding likewise results in a remand on due process grounds, since the judge's actions denied the Ahmeds the chance to ensure that the facts of their case were properly considered in a full and fair hearing.

finding on numerous other misunderstandings that he failed to recognize were at least partially his own creation.

## III.

The proper remedy for this due process violation is to give the Ahmeds an opportunity to have their case heard fairly. *See, e.g.*, *Amadou*, 226 F.3d at 728. We therefore **GRANT** the petition for review, **VACATE** the decision of the BIA and **REMAND** this case with instructions that the Ahmeds be provided with a new hearing before a different immigration judge.