NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0674n.06
Filed: August 8, 2005

Case No. 03-4068

### UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ARONA DIALLO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM AN ORDER OF THE |
| | ) | BOARD OF IMMIGRATION |
| ALBERTO GONZALES, Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| | ) | |

**BEFORE:  NELSON and BATCHELDER, Circuit Judges; O'MALLEY[*], District Judge.**

**ALICE M. BATCHELDER, Circuit Judge.**  Arona Diallo ("Diallo"), a Black Mauritanian ("Black Maur") male, petitions for review of a final order of removal from the United States, claiming that the Board of Immigration Appeals ("the Board") erred in finding that Diallo had no well-founded fear of persecution due to changed country conditions, and in disregarding a chapter from the book *Silent Terror* which argues that slavery continues to exist in Mauritania.  Because the evidence does not compel a contrary finding regarding changed country conditions, and because the weighing of evidence is a function for the Board and not this court, we deny the petition for review.

### BACKGROUND

---

[*]The Honorable Kathleen M. O'Malley, United States District Judge for the Northern District of Ohio, sitting by designation.

Diallo is a native and citizen of Mauritania, born there in 1977. He entered the United States without inspection in 1996. The Immigration and Naturalization Service ("INS")[1] sought Diallo's removal under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled. In 1998, Diallo applied for asylum, claiming past persecution and a well-founded fear of future persecution on account of race, nationality, and membership in a particular social group because he and his family were subject to mistreatment and deportation from Mauritania in 1989 on account of their race.

In a hearing before an Immigration Judge (" IJ") Diallo conceded removability, but submitted evidence in support of asylum, withholding of removal, and protection under the Convention Against Torture. Diallo testified that in 1989 the Mauritanian Army raided his family's farm and arrested and detained him and his family for three months, subjecting them to beatings and other forms of persecution before eventually deporting them to Senegal. Diallo also testified that during the three-month period of detention, his brother disappeared and was presumably killed. From 1989 to 1996, Diallo lived at a refugee camp in Senegal (where his family remains), in Gambia, and in Dakar. While in Dakar, Diallo met a man who provided him food and transportation to Baltimore, Maryland. Diallo then came to Ohio, where he filed an application for asylum.

The IJ found Diallo's testimony to be credible and found that Diallo had demonstrated past persecution on account of his race. Nonetheless, the IJ found that Diallo did not have a well-founded fear and likelihood of future persecution based on race, because the evidence, in the form of the State Department's 1998 Country Report, indicated that changed country conditions in

---

[1]On March 1, 2003, the INS ceased to exist as an independent agency within the Department of Justice and its functions were transferred to the newly formed Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. 107-296, §§ 441, 471, 116 Stat. 2135, 2192, 2205 (codified at 6 U.S.C. § 101, *et seq.*). Because most of the proceedings in Diallo's case occurred prior to this change, we refer to INS as the relevant government actor.

Mauritania made future persecution unlikely. The IJ therefore denied Diallo's applications for asylum and withholding of removal.

The Board upheld the IJ's decision on appeal, issuing a brief opinion. The Board noted that because the IJ found that Diallo had demonstrated past persecution, he was entitled to a rebuttable presumption that he has a well-founded fear of future prosecution, but that the IJ properly found that presumption rebutted by evidence of changed country conditions. The Board agreed that Diallo's evidence of present problems in Mauritania lacked a connection to a protected ground, and that "unconfirmed reports" of security forces abusing Black Maurs who try to reclaim their land were outweighed by persuasive evidence of changed country conditions contained in the State Department Report. Finally, the Board agreed that Diallo's evidence of slavery in Mauritania was "not relevant" because it did not relate to Diallo's specific claims and it predated the significant changes in conditions in Mauritania detailed in the State Department Report. For these reasons the Board dismissed Diallo's appeal.

Diallo filed a timely petition for judicial review.

## ANALYSIS

### I.      Standard Of Review

On judicial review, the Board's findings of fact are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *See Ali v. Reno*, 237 F.3d 591, 596 (6th Cir. 2001) (quoting 8 U.S.C. § 1252(b)(4)(B)). Under this deferential standard, we may not reverse the Board simply because we disagree with its apprehension of the facts. *Koliada v. INS*, 259 F.3d 482, 486 (6th Cir. 2001); *see Singh v. INS*, 134 F.3d 962, 966 (9th Cir. 1998) ("This strict standard bars a reviewing court from independently weighing the evidence and holding that

3

petitioner is eligible for asylum, except in cases where compelling evidence is shown."). Rather, we must find that the evidence compels a finding that the Board was wrong. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1, 483-84 (1992).

**II.     Well-Founded Fear Of Persecution**

Diallo contends that he is eligible for asylum as a "refugee" as described in 8 U.S.C. § 1101(a)(42)(A), which defines a refugee as an alien who is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Elias-Zacarias*, 502 U.S. at 481; *Ivezaj v. INS*, 84 F.3d 215, 221 n.4 (6th Cir. 1996). "A well-founded fear of persecution has both a subjective and an objective component: an alien must actually fear that he will be persecuted upon return to his country, and he must present evidence establishing an 'objective situation' under which his fear can be deemed reasonable." *Perkovic v. INS*, 33 F.3d 615, 620-21 (6th Cir. 1994) (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 430-31 (1987)). An applicant's showing of past persecution triggers a rebuttable presumption of a well-founded fear of future persecution on the basis of the original claim. *See* 8 C.F.R. § 1208.13(b)(1). The INS can rebut this presumption by showing by a preponderance of the evidence that "[t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution." 8 C.F.R. § 1208.13(b)(1)(i)(A); *see Ouda v. INS*, 324 F.3d 445, 452 (6th Cir. 2003). Nevertheless, "[t]he INS must do more than show that circumstances in the country have fundamentally changed; the INS must also show that such change negates the particular applicant's well-founded fear of persecution." *Ouda*, 324 F.3d at 452.

4

The Board found that Diallo had successfully demonstrated past persecution on account of his race, which shifted the burden to the INS to overcome a presumption of a well-founded fear of future persecution based on race. *See* 8 C.F.R. § 1208.13(b)(1). The Board found that evidence of changed country conditions in Mauritania, including the State Department's 1998 Country Report ("the Report"), was sufficient to overcome the presumption in Diallo's favor.

The Report indicates that, in May 1998, the Mauritanian government entered into an agreement with the United Nations establishing the terms under which the United Nations High Commissioner for Refugees ("UNHCR") could help resettle refugees who had been expelled in 1989-91, and created a ministry within the Mauritanian government for human rights, poverty alleviation, and integration. The Report also indicates that the majority of those deported in 1989-91, such as Diallo, have successfully returned to Mauritania, and those that have not remain under UNHCR protection, even though there appears to be no impediment to their returning. The Report also notes that there were no reports of political killings or political prisoners for 1998. The Report indicates as well that, in 1996, the Mauritanian Red Cross, the UNHCR, and various non-governmental organizations undertook 223 agricultural, water, health, education, and construction projects at 130 villages to assist returnees, but that the UNHCR terminated its rapid integration program at the end of that year after determining that everyone who wanted to return had returned. The Report therefore constitutes evidence of changed conditions that "negates the particular applicant's well-founded fear of persecution," *see Ouda*, 324 F.3d at 452, because it shows a relaxing of the racial persecution of the Black Maurs after the time for which Diallo had successfully established past persecution on account of race.

5

Diallo's response to the evidence of changed country conditions is not persuasive. He cites several parts of the Report that point to deficiencies in Mauritania's government and society, but these are deficiencies that have little or nothing to do with the prospect of his being persecuted on account of his race. He points to vague language in the Report indicating that animosity among the races is still present in Mauritania, but this does not constitute evidence of present-day persecution of Black Maurs based on race. In fact, Diallo's only potential evidence of current persecution of Black Maurs based on race is a part of the Report mentioning "unconfirmed reports" that security forces had abused returning refugees in the south. The Report goes on to note, however, that any such abuses declined as the UNHCR and Mauritanian Red Cross became involved in aiding returning refugees. In the end, these "unconfirmed reports" offer relatively weak evidence of likely future racial persecution for Diallo, and are certainly not sufficiently persuasive to compel a finding that this evidence meets or exceeds the INS's evidence of changed conditions. *See* 8 C.F.R. §§ 1208.13(b)(1), 1208.13(b)(1)(i)(A).

Diallo submits as an addendum to his brief the unpublished case of *In Re Harouna Diallo* (B.I.A. Jan. 6, 2003), in which the Board overturned an IJ's finding of changed country conditions relating to Black Maurs in Mauritania. Diallo argues that the Board's decision in his own case is inconsistent with the result in *Harouna Diallo*. Citing 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if–(1) the alien has exhausted all administrative remedies available to the alien as of right . . ."), the INS argues that we lack jurisdiction to consider this argument because Diallo did not present it to the Board, and points out that in any event, *Diallo* is an unpublished opinion and thus should be accorded little or no precedential weight. *See Chan v. Reno*, 113 F.3d 1068, 1073 (9th Cir. 1997) (citing *Leal-Rodriguez v. INS*, 990 F.2d 939, 946 (7th Cir. 1993) ("We

6

will not bind the BIA with a single non-precedential, unpublished decision any more than we ourselves are bound by our own unpublished orders.")). Whether or not the petitioner's failure to cite to the Board an arguably inconsistent precedent rises to the level of a failure to exhaust his administrative remedies, we think it makes sense that the Board should have the first opportunity to decide whether Diallo's case fits within its own precedent. But even if we consider the unpublished *Diallo* opinion, it is of little help to the petitioner here. *Diallo* dealt with the INS's failure to show changed country conditions for Black Maurs involved in the African Liberation Front of Mauritania, a political organization; in the case at bar, the INS need only demonstrate changed conditions for Black Maurs generally.

Because Diallo has put forth little or no persuasive evidence to counter the INS's evidence of changed conditions for the Black Maurs in Mauritania, the record does not compel a finding that the INS failed to rebut Diallo's presumption of future persecution based on race. *See* 8 C.F.R. §§ 1208.13(b)(1), 1208.13(b)(1)(i)(A). Therefore, we must defer to the Board's finding that Diallo failed to demonstrate a well-founded fear of future persecution.

## III.  Evidence Of Slavery In Mauritania Prior To Changed Conditions

Diallo argues that, in weighing his evidence of a well-founded fear of future persecution, the Board erred by refusing to consider an excerpt from the book *Silent Terror*, which included testimony that the author provided to Congress in 1996 concerning the continuing enslavement of Black Maurs in Mauritania. This argument is without merit. The record clearly shows that the book excerpt was explicitly admitted into the record, considered by the IJ, and found to be "by and large not relevant" to this case. The Board explicitly affirmed the IJ's finding and it is clear that the Board was entirely justified in doing so. The excerpt details the author's

7

congressional testimony from March 1996, over three and a half years prior to Diallo's November 1999 hearing before the IJ, and more importantly, before all of the 1998 repatriation efforts detailed in the State Department's Country Report and cited by the INS as evidence of changed conditions for Black Maurs in Mauritania. The book excerpt consisting of testimony from 1996 does nothing to rebut INS's evidence of changes that occurred in 1998, which makes it of little or no relevance to Diallo's case and entitles it to little or no weight. Weighing the evidence is a task assigned to the Board, and we cannot overturn the Board's findings of fact unless the evidence compels a finding that the Board was wrong. *See Elias-Zacarias*, 502 U.S. at 481 n.1, 483-84; *Singh*, 134 F.3d at 966. The evidence does not compel such a finding in this case.

## CONCLUSION

For the foregoing reasons, we **DENY** the petition for review.

**KATHLEEN M. O'MALLEY, District Judge, dissenting.**  I respectfully dissent.  I am unpersuaded that the State Department Country Report contains sufficient evidence of changed country conditions to overcome the presumption of future persecution which arises under 8 CFR§1208.13(b)(1).  While this conclusion could justify reversal of the Board's decision, it appears that, in this case, the Board may not have scrutinized the Country Report with the level of care it normally employs.  Accordingly,  I would remand this matter to the Board for reconsideration in light of the Board's 2003 decision in *In re: Harouna Diallo* (B.I.A. Jan. 6, 2003).